**Robert L. FIELD, Appellant,**

v.

**AIM MANAGEMENT GROUP, INC., Appellee.**

**No. C14–91–01365–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 14, 1993.

Jerald David Mize, Houston, for appellant.

Phillip T. Bruns, Houston, for appellee.

Before ROBERTSON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a directed verdict granted by the court below. The trial court found that appellant offered no evidence of the amount or existence of actual damages, and that appellant's live pleadings contained a judicial admission which, absent evidence of damages, was sufficient to grant an instructed verdict. Appellant challenges the trial court's ruling, asserting that evidence of damages was offered, and no judicial admission exists in the pleadings. Alternatively, appellant also argues in his second point that even if the pleadings contained a judicial admission, appellees' failure to object on those grounds constituted a waiver. We sustain

both points of error and reverse the judgment of the trial court.

Robert L. Field filed a tortious interference suit against AIM Management Group, for interfering with his contract with Prudential–Bache to sell his AIM stock. Field, a former president of AIM Distributors, a subsidiary of AIM Management, had acquired 55,000 shares of AIM stock while employed by that company. Field resigned as president of the subsidiary to accept a similar position with a competitor company, and, therefore, desired to sell his shares in AIM to avoid any conflict of interest. The Chairman and Chief Executive Officer of AIM, Ted Bauer, offered Field $6 per share for his stock. Field refused that offer, believing the value of the stock to be at least $8 per share. Field then enlisted the services of Prudential–Bache Securities, Inc. (Pru–Bache) on March 2, 1988, to assist him in finding a buyer for the stock. H. Todd Roggen, a Pru–Bache stockbroker, solicited prospective purchasers to ascertain their interest in Field's stock. Roggen testified that the stock was probably worth $8 per share, and that prospective purchasers were sought with this price in mind.

Subsequently, Robert Graham, President of AIM, as well as other selected AIM shareholders, created AIM Holdings, a Texas partnership. The purpose of this partnership was to borrow funds to cover 100% of the purchase price of appellant's stock at $6 per share, in order to later sell it to a new investor for a higher price. Graham referred to the prospective buyer as a "deep pockets investor."

On April 4, 1988, AIM's general counsel, William Kleh, sent a letter to the Pru–Bache office manager, Frederick McGinnis regarding the attempt by Pru–Bache to find a buyer for appellant's stock. The letter stated that AIM had not authorized appellant to sell his shares without its approval. The letter also informed McGinnis that strict contractual restrictions existed with regard to the stock, and that any information furnished to appellant by AIM was confidential and could not be revealed to other stockbrokers. The letter also warned that since AIM was a privately owned corporation and not listed on the public stock exchange, efforts to solicit buyers for appellant's stock may not be consistent with federal and state securities law provisions governing public and private solicitations to purchase securities. There is also some evidence that Kleh may have telephoned someone at Pru–Bache about the matter as well. After receiving Kleh's letter, Pru–Bache ceased all attempts to solicit purchasers for appellant's shares. Unable to find any other buyers, appellant sold his stock to AIM Holdings for $6 per share. AIM later sold the stock for $9⅛ per share to the "deep pockets investor" shortly thereafter.

At trial, AIM's Chairman Bauer testified that while AIM had a right of first refusal, appellant could attempt to find purchasers for his stock. Expert testimony offered by appellant also concluded he did not need authorization from AIM to solicit interest in his stock, and that such solicitation did not violate any securities laws or contractual requirements. AIM's security expert testified that it was his belief that no sale of appellant's stock could take place without AIM's consent. Other testimony relating to the value of the stock was also presented at trial by both parties.

The court declared a mistrial after the jury was unable to reach a verdict. Appellee subsequently filed a motion for a directed verdict. In that motion, the appellee asserted that no evidence of actual damages had been proven. The appellee also contended in the motion that the pleadings contained a judicial admission sufficient to warrant a directed verdict. The trial court granted appellee's motion without stating the grounds on which it was granted. Thus, on appeal, appellant's burden is to show that neither basis will support the granting of the directed verdict. *See Gibbs v. Main Bank of Houston*, 666 S.W.2d 554, 556 (Tex.App.—Houston [1st Dist.] 1984, no writ).

In his first point of error, appellant argues the trial court erred in directing a verdict on the grounds that no evidence existed to support the amount of damages. Generally, if a court finds that

no evidence exists with regard to an ultimate fact issue, the proper action is to grant an instructed verdict. *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176 (Tex. 1986). Since appellant is challenging the no evidence finding of the trial court, we, as an appellate court, must review the entire record to determine whether there is more than a scintilla of evidence that a fact question existed regarding the amount of actual damages. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696–97 (Tex.1986).

At trial various testimony was presented relating to the value of appellant's stock. Robert Graham, president of AIM testified AIM stock sold for $8 a share seven months prior to the letter being sent. He further testified that AIM had attempted to purchase another shareholder's stock at $9 per share in 1987, and that his personal notes reflected that in July 1988 he believed that the "deep pockets investor" might have to pay at least $10 per share for appellant's stock. Additional testimony elicited from Graham revealed that AIM Holdings sold appellant's stock, which it acquired for $6 per share, to the "deep pockets investor" for 9⅛ per share, among other benefits.

The deposition of Todd Roggen, the Pru–Bache stockbroker in charge of finding prospective buyers for appellant's stock, was also offered at trial. He testified that the stock was probably worth $8 a share and he proceeded to seek buyers on that basis. He also stated that he had considered purchasing appellant's stock for $8 per share. He further testified that he believed that he could obtain a better price for the stock than AIM was offering appellant.

Appellant testified that he believed the letter of April 4, 1988, precluded the sale of his stock to anyone other than AIM. He further stated that as a former president of AIM Distributors, familiar with the value of securities, he believed that absent AIM's interference, he *could* have sold the stock *for $8* per share.

While it is true that other evidence was offered contradicting this testimony, it is not for us as the reviewing court to play the role of fact finder and decide which testimony is more persuasive. We can only determine whether sufficient evidence existed on the issue to raise a fact question and thus preclude a directed verdict. Based upon the evidence presented, we find the trial court erred in granting the directed verdict. The evidence is certainly more than a mere scintilla, and merits review by a jury. Accordingly, point of error one is sustained.

■ Appellant contends in his second point of error that the trial court also erred if it grounded its directed verdict on a finding that appellant's live pleadings contained a judicial admission on an ultimate issue. Specifically, appellant's petition contained the statement that the letter of April 4, 1988, from Mr. William Kleh to Mr. Fred McGinnis did not deter Todd Roggen's sales efforts. Appellee successfully argued in the trial court that this statement legally established the fact that no interference with appellant's contract had occurred, thus, a directed verdict was the only proper remedy.

Other portions of his pleadings state that Pru–Bache attempted to sell his stock *until* the letter of April 4, 1988. This, appellant contends, is inconsistent with the above pleading, and is merely a form of alternative pleading as provided for in Rule 48 of the Texas Rules of Civil Procedure. We agree. Rule 48 states that a party may plead as many separate claims or defenses as he has, regardless of consistency. TEX. R.CIV.P. 48.

■ Furthermore, in order for a pleading to be deemed a judicial admission, it must be deliberate, clear and unequivocal. *Kirby Forest Industries v. Kirkland*, 772 S.W.2d 226, 233 (Tex.App.—Houston [14th Dist.] 1989, writ denied). From our reading of appellant's petition, we do not find that the statement at issue is at all clear or unequivocal. Judicial admissions which determine an ultimate issue must be made of sterner stuff than merely conflicting allegations.

Appellant further asserts that appellee waived the alleged judicial admission argument because it failed to properly object at trial. During appellant's case in chief, evidence was offered to the effect that the April 4 letter deterred Pru–Bache from soliciting prospective buyers for appellant's stock. Appellee objected to the evidence as being "outside the pleadings." This objection was overruled. At the close of appellant's case, appellee moved for a directed verdict on the grounds of judicial admission, but without specifying the admission relied upon. That motion was denied. After the jury was unable to reach a verdict, the court granted a mistrial, which he set aside upon granting appellee's second motion for directed verdict. However, we find the trial judge erred in granting the motion for directed verdict. A judicial admission defense is waived when evidence contrary to the purported admission is heard without objection on that ground. *Industrial Disposal Supply Company, Inc. v. Perryman Bros. Trash Service, Inc.*, 664 S.W.2d 756, 764 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Appellee's objection to the critical evidence as being "outside the pleadings" did not preserve error with regard to the issue of judicial admission. In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely objection *stating the specific grounds for the ruling he desired the court to make* if the grounds were not apparent from the context. TEX.R.APP.P. 52. (Emphasis added). Appellee's objection only made a general reference to the pleadings and did not specify what made the testimony objectionable. Technically speaking, the evidence to which appellee objected was *inside* the pleadings, since appellee contends that the pleadings contained a judicial admission. Without a proper specific objection by appellee, the error, if any, was waived and could not support the granting of an instructed verdict on that issue.

In a battle of waivers, appellee argues in its supplemental reply brief that appellant in turn waived the judicial admission waiver argument because he did not address the issue in his response to appellee's motion for directed verdict. In essence, appellee would require a party to respond to a motion for instructed verdict, a legal remedy which establishes an issue as a matter of law. We find no authority for this argument. A directed verdict is a legal determination which establishes an issue as a matter of law. A response is not always required, because the movant's proof or grounds may be legally insufficient to sustain the motion. *See Cove v. Manges*, 602 S.W.2d 512, 514 (Tex.1980).

Appellee further suggests that by failing to address the judicial admission issue until his motion for new trial, appellant waived any challenge to the instructed verdict. Again, Texas law establishes the contrary. A party is not required to file a new trial motion as prerequisite to the right to complain on appeal of trial court's action in granting a directed verdict. *Adcock v. Couser*, 442 S.W.2d 490, 492 (Tex. Civ.App.—Waco 1969, no writ).

Appellee also contends appellant waived this argument because he improperly briefed the point. Specifically, appellee asserts appellant's real complaint should be couched in terms of attacking the trial court's refusal to grant a new trial. Since appellant's motion for new trial was denied, appellee urges us to find appellant is limited on appeal to complaining about the trial court's failure to grant the motion for new trial. We fail to find any basis in the law for this argument. In cases where a party fails to file a motion for new trial after an instructed verdict has been granted, that party is limited on appeal to a complaint that the court erred in granting the instructed verdict. *Spillman v. City of Dallas*, 535 S.W.2d 717, 718 (Tex.Civ.App.—Eastland 1976, writ ref'd n.r.e.). This language analogously implies that if a party files a motion for new trial following the granting of an instructed verdict, then he may either challenge the instructed verdict directly, or challenge the trial court's refusal to grant a new trial. Point of error two is sustained.

We find the instructed verdict cannot be sustained on either of the grounds alleged

in the motion and sustain appellant's points of error. Accordingly, the judgment of the trial court is REVERSED and the cause is REMANDED for a new trial.

JUNELL, J., not participating.