NUMBER 13-08-00700-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


DAVID TORRES, Appellant,


v.


CITY OF CORPUS CHRISTI, Appellee.

 




On appeal from the County Court at Law No. 4


of Nueces County, Texas.


 




MEMORANDUM OPINION



Before Justices Yañez, Benavides, and Vela


Memorandum Opinion by Justice Benavides


 David Torres, appellant, appeals the trial court's dismissal of his whistleblower claim
against the City of Corpus Christi ("City"), appellee, for lack of jurisdiction. Torres argues
that the trial court erred in dismissing his case for lack of jurisdiction, or, at the very least,
that the trial court should have abated the case rather than dismiss it. We reverse and
remand.


I. Background

 Torres, a 31-year veteran of the Corpus Christi Police Department ("Department")
who had risen to the rank of commander, filed suit against the City on May 15, 2008,
alleging a whistleblower claim under section 554.002 of the government code. See Tex.
Gov't Code Ann. § 554.002 (Vernon 2004). Torres essentially asserts that three
circumstances led to adverse employment actions taken against him.

 First, Torres complains that on two different periods of hiring in his division, Torres's
superiors wanted him to show favoritism to their preferred candidates. Torres told then
Chief of Police Bryan P. Smith that he would not accept his superiors' recommendations,
which Torres believed were discriminatory in that they only included "Anglo" officers. One
of Torres's superiors challenged him regarding Torres's claim that the recommendations
were discriminatory and complained to Smith.

 Second, Torres asserts that Smith and an assistant chief instructed Torres to cease
his investigation into assault allegations against an individual, stating that a "high powered"
attorney was going to handle the assault case as a civil matter. Torres also alleged that
this same individual was suspected of impersonating a Nueces County Sheriff's deputy,
yet according to Torres, the supervisors in charge of the investigation failed to pursue it. 
Torres stated that he informed Smith that an investigation should be made regarding why
these superiors did not investigate the matter. No investigation into the lack of
investigation was made.

 Third, Torres argues that in May 2007, a Nueces County assistant district attorney
informed him that a fellow police officer had improperly purchased a vehicle from the police
impound lot. Torres began investigating. During the course of the investigation, Torres
argues, Smith made him a suspect. Torres was subjected to two interviews with the
Department's Internal Affairs division and a polygraph examination. The polygraph
allegedly resulted in a finding of "Deception Indicated" regarding three areas of inquiry,
including a question about whether Torres was being truthful during the Internal Affairs
interviews. Torres contended that the assistant district attorney who originally informed
Torres of the wrongdoing denied to Internal Affairs that he had given such information to
Torres; however, the polygraph examination revealed "No Deception Indicated" on the
question of who was Torres's informant.

 Torres stated that, on April 23, 2008, Smith issued him a letter of contemplated
disciplinary action in the form of termination of employment. According to Torres, the letter
stated, in part, that "[h]onesty and integrity are paramount in the law enforcement
profession." Torres and Corpus Christi Police Officers Association President Domingo
Ybarra met with Smith, who initially offered Torres "alternative disciplinary punishment." 
Torres refused the offer, and Smith then offered Torres the option to retire in lieu of
punishment. Torres refused this offer as well. Smith then gave Torres a letter stating that
he was demoted from commander to captain and was suspended for 240 hours. Torres
signed the letter acknowledging receipt of the punishment. Before Torres left the office,
Smith took the letter back from Torres and stated that he needed to discuss the letter with
"legal." Later that day, Smith issued Torres a letter of reprimand which asserted that
Torres's investigation "was well below what [Smith] would consider an acceptable
standard" indicating "a lack of investigative integrity and attempts to make said
investigation culminate in a predetermined conclusion." 

 Torres contended that these actions were violations of the law and that he reported
them to Smith. Torres argued that he was subjected to "adverse personnel action" in
retaliation for making the reports. Specifically, Torres asserted that the adverse personnel
action "insure[d] that [he] will never be promoted to Assistant Chief of Police for the City
of Corpus Christi and Chief of Police in any municipality in any State" and that the
"reprimand is a precursor to future adverse personnel action, i.e. [sic], termination."

 The April 23, 2008 reprimand letter informed Torres that he "may submit a written
response to the Chief of Police, City of Corpus Christi, which will be placed in [his]
personnel file." 

 On May 2, 2008, Torres provided a response to Smith. Torres stated in part that

 [t]his Letter of Reprimand is brought, in part, for retaliatory purposes for
bringing to light Criminal Violations by police officers. I have sought the
investigation of various wrong doings[,] and I am being subjected to
retaliation. I believe this Letter of Reprimand is a precursor to future planned
disciplinary actions by the department and Chief of Police. I also request
that the Chief of Police write a letter acknowledging that I have done no
wrong as to each matter referred [to] in the Contemplated Disciplinary Action
Letter. 


 Also on May 2, 2008, Torres delivered a demand letter and copy of a proposed
original petition to Skip Noe, Corpus Christi City Manager. The letter stated that it was
from a law office representing "David Torres in a claim against the City of Corpus Christi
under the Texas Whistleblower Act, Texas Government Code, Chapter 554" and informed
Noe that the claim was outlined in more detail in the attached proposed original petition. 
The demand letter also made a settlement offer to Noe and informed him that the lawyer
was "instructed to file the lawsuit if this matter is not settled by noon on May 14, 2008." 
The proposed petition set forth the same allegations outlined above.

 On May 14, 2008, the City responded to Torres's demand letter via a letter sent to
Torres's attorney. The City stated in part "[y]our allegations are currently being
investigated by the Internal Affairs Division of the Corpus Christi Police Department."


 On May 15, 2008, Torres filed his original petition, which was identical to the
proposed original petition he provided to the City on May 2, 2008. In addition to the
aforementioned allegations, Torres also averred that all conditions precedent had been
satisfied and that letters of reprimand cannot be grieved or appealed.

 On August 7, 2008, the City answered, denying all of Torres's allegations, and on
August 8, 2008, the City filed a plea to the jurisdiction and motion to dismiss for lack of
jurisdiction. In the plea to the jurisdiction, the City asserted that as an employee of the
Department, Torres was "a member of the collective bargaining unit and subject to the
terms of the Agreement Between the City of Corpus Christi and the Corpus Christi Police
Officers' Association" ("Agreement"). The City alleged that Torres failed to follow the
grievance procedure for whistleblowers set out in the Agreement and that completion of
the grievance procedure is jurisdictional. See Tex. Gov't Code Ann. § 554.006(a) (Vernon
2004) (requiring an employee of a local government entity to "initiate action under the
grievance or appeal procedures of the employing . . . local governmental entity relating to
suspension or termination of employment or adverse personnel action" prior to filing a
whistleblower law suit); id. § 311.034 (Vernon Supp. 2009) ("Statutory prerequisites to a
suit . . . are jurisdictional requirements in all suits against a governmental entity."). 
Therefore, the City contended, Torres failed to properly invoke the jurisdiction of the trial
court.

 On August 28, 2008, Torres responded to the City's plea to the jurisdiction and
motion to dismiss. He asserted that he followed the appropriate procedure and that even
if he did not, the lawsuit was merely prematurely filed and should be abated. On
November 26, 2008, the trial court heard the arguments of the parties and granted the
City's plea, thereby dismissing the case for lack of jurisdiction. This appeal ensued.

II. Standard of Review

 A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without
regard to the merit of the asserted claims. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547,
554 (Tex. 2000). The plea challenges the trial court's subject-matter jurisdiction. Id.; see
Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). Whether a trial court has
subject-matter jurisdiction and whether a pleader has alleged facts that affirmatively
demonstrate the trial court's subject-matter jurisdiction are questions of law that we review
de novo. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Tex.
Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002).

 The plaintiff must plead facts affirmatively demonstrating that the trial court has
jurisdiction. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993);
Univ. of N. Tex. v. Harvey, 124 S.W.3d 216, 220 (Tex. App.-Fort Worth 2003, pet. denied). 
We liberally construe the pleadings in favor of the pleader, look to the pleader's intent, and
accept as true the factual allegations in the pleadings. See Miranda, 133 S.W.3d at 226,
228; City of Fort Worth v. Crockett, 142 S.W.3d 550, 552 (Tex. App.-Fort Worth 2004, pet.
denied).

 A trial court's review of a plea to the jurisdiction challenging the existence of
jurisdictional facts mirrors that of a traditional motion for summary judgment. Miranda, 133
S.W.3d at 228; see Tex. R. Civ. P. 166a(c). The governmental unit is required to meet the
summary judgment standard of proof for its assertion that the trial court lacks jurisdiction. 
Miranda, 133 S.W.3d at 228. The plaintiff is then required to show that there is a disputed
material fact regarding the jurisdictional issue. Id. If the evidence creates a fact question
regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its
resolution to the fact finder. Id. at 227-28. But, if the evidence is undisputed or fails to
raise a fact question on the jurisdictional issue, the trial court rules on the plea to the
jurisdiction as a matter of law. Id. at 228.

III. Applicable Law

 "A state or local governmental entity may not suspend or terminate the employment
of, or take other adverse personnel action against, a public employee who in good faith
reports a violation of law by the employing governmental entity or another public employee
to an appropriate law enforcement authority." (1) Tex. Gov't Code Ann. § 554.002(a). 
"'Personnel action' means an action that affects a public employee's compensation,
promotion, demotion, transfer, work assignment, or performance evaluation." Id. §
554.001(3) (Vernon 2004). "[F]or a personnel action to be adverse within the meaning of
[section 554.002], it must be material, and thus likely to deter a reasonable, similarly
situated employee from reporting a violation of the law." Montgomery County v. Park, 246
S.W.3d 610, 612 (Tex. 2007). 

 "A public employee must initiate action under the grievance or appeal procedures
of the employing state or local governmental entity relating to suspension or termination
of employment or adverse personnel action before suing under this chapter." Tex. Gov't
Code Ann. § 554.006(a). If the local government entity does not render a final decision
by the sixty-first day after the employee initiates the grievance or appeal procedures, the
employee may elect to exhaust or terminate the procedures. See id. § 554.006(c). "While
the Whistleblower Act [see Tex. Gov't Code Ann. §§ 554.001-.010 (Vernon 2004)] does
not dictate what actions are required to 'initiate' the grievance procedure, the Act is
remedial in nature and should be liberally construed to effect its purpose." Tex. Youth
Comm'n-Evins Reg'l Juvenile Ctr. v. Garza, No. 13-08-00527-CV, 2009 WL 1238582, at
*5 (Tex. App.-Corpus Christi May 07, 2009, no pet.) (citing Moore v. Univ. of
Houston-Clear Lake, 165 S.W.3d 97, 102 (Tex. App.-Houston [14th Dist.] 2005, no pet.);
City of New Braunfels v. Allen, 132 S.W.3d 157, 161 (Tex. App.-Austin 2004, no pet.)). 
"Statutory prerequisites to a suit, including the provision of notice, are jurisdictional
requirements in all suits against a governmental entity." (2)
 Tex. Gov't Code Ann. § 311.034;
see Univ. of Houston v. Barth, 265 S.W.3d 607, 610 (Tex. App.-Houston [1st Dist.] 2008,
pet. filed) ("If the employee does not timely initiate the grievance procedure, then his claims
are jurisdictionally barred.").

IV. Analysis

 Torres first argues alternatively, that the appeal and grievance procedures in the
Agreement do not apply in his case, but if they do, he complied. The City contends that
the appeal and grievance procedures apply and that Torres failed to comply with either
procedure. 

A. Applicability of Appeal Procedure

 Torres asserts that the Agreement does not provide a method for appealing a
reprimand. In Article 7 of the Agreement, entitled "Disciplinary Action," the Agreement, in
Subsection A, states:

 The Chief shall have authority to demote, temporarily suspend not to exceed
240-work hours, or terminate any employee for the causes set forth in the
Rules and Regulations of the Civil Service Commission for Firefighters and
Police Officers of the City. In the alternative, the Chief shall have authority
to impose "alternate disciplinary actions" in the nature of required attendance
at and participation in remedial, educational or rehabilitative
programs . . . The employee may appeal such actions as provided herein. 
Nothing herein shall be construed to allow appeals of reprimands or other
disciplinary actions or alleged disciplinary actions, which were not previously
appealable . . . .


With regard to reprimands, Subsection U of Article 7 of the Agreement provides:

 Written reprimands may be issued by any supervisor to an office without
requiring prior notification. Copies of all written reprimands shall be given to
the affected officer. The officer may reply, and such reply shall become a
part of the officer's permanent civil service file. No written reprimand shall
be placed in the file without the officer's knowledge. Letters of counseling
shall become a part of the officer's departmental file.


The agreement does not expressly provide for appealing a reprimand. In fact, Subsection
A indicates that reprimands "were not previously appealable." The only response to a
reprimand provided in the Agreement is the officer's right to reply, which Torres did on May
2, 2008. We agree with Torres that Article 7's appeal procedure does not apply to
reprimands.

B. Applicability of Grievance Procedure

 Torres also argues that the grievance procedure in Article 8 of the Agreement does
not apply to his whistleblower claim. The City asserts that the grievance procedure
expressly applies, and we agree, although we disagree with part of the City's reasoning.

 The City first contends that Torres judicially admitted that the grievance procedure
applies and that he failed to comply with it by stating in his "Second Amended Original
Petition," Torres's live pleading, that "[l]etters of reprimand cannot be grieved or appealed
by employees of Defendant City of Corpus Christi." See Bowen v. Robinson, 227 S.W.3d
86, 94 (Tex. App.-Houston [1st Dist.] 2006, pet. denied) ("In order for a pleading to be
deemed a judicial admission, it must be deliberate, clear, and unequivocal."); Lyons v.
Lindsey Morden Claims Mgmt. Inc., 985 S.W.2d 86, 92 (Tex. App.-El Paso 1998, no pet.)
(noting that "[j]udicial admissions are assertions of fact, not pleaded in the alternative, in
the live pleadings of a party"). While Torres did make the aforementioned statement in the
"Conditions Precedent" section of his "Second Amdended Original Petition," he stated in
the "Whistleblower Claim" section of his live pleading that the May 2, 2008 reply to the
reprimand represented his grievance. Such conflicting allegations are not unequivocal and
cannot be a judicial admission. See Field v. AIM Mgmt. Group, Inc., 845 S.W.2d 469, 472
(Tex. App.-Houston [14th Dist.] 1993, no writ).

 Article 8 of the Agreement, entitled "Grievance Procedure," expressly provides a
procedure for grieving whistleblower claims. In Subsection A, it states in relevant part, 

 [o]nly matters involving the interpretation, application, or enforcement of the
terms of this agreement, shall constitute a grievance under the provisions of
this grievance procedure, with the exception of Whistleblower claims. Any
claim of adverse action based on Whistleblower status under Article 554,
Government Code, or federal law must be in accordance with the procedure
usually applicable under this grievance procedure, and shall follow the
process set forth in Section E.


Torres asserted in his "Second Amended Original Pleading" that he was bringing his claim
"under the Texas Whistleblower Act, Texas Government Code, Chapter 554." Thus, we
conclude that the grievance procedure does apply to Torres's whistleblower claim.

C. Compliance with Grievance Procedure

 Torres next argues that he complied with the grievance procedure by delivering his
reply to Smith's reprimand and through the demand letter his attorney sent to Noe. The
City asserts that Torres failed to initiate the grievance procedure because he failed to
follow the grievance steps provided in the Agreement. 

 1. The Agreement's Grievance Procedure

 As mentioned, the grievance procedure is set forth in Article 8 of the Agreement. 
Subsection A directs the whistleblower to perform what appears to be two tasks: (1) follow
the usual grievance procedure, and (2) follow the procedure set out in Subsection E
entitled "Whistleblower Claims." 

 For non-whistleblower complaints, the usual procedure is clear and comprises five
steps which are explained in Subsection D. The first step is entitled "Informal Process" and
permits employees to "informally resolve their concerns through their immediate supervisor
or others consistent with the chain of command." Step 2 states that the non-whistleblower
shall submit his grievance in writing to the police officer's association ("association") within
30 days of the grievance. Step 2 gives the association sole discretion to determine within
30 days whether the grievance is valid. Step 3 commands the police officer's association
to present the grievance to the commander in the aggrieved employee's chain of
command, if the association finds the grievance to be valid. The commander has 30 days
to respond, and if he does not do so within 30 days, the grievance is deemed denied. Step
4 allows the association to submit a grievance from Step 3 to the chief of police who shall
respond in writing within 30 days of receipt of the grievance. Step 5 provides that the
association may submit the grievance to arbitration within 60 days of a denial of the
grievance at Step 4.

 Subsection E applies exclusively to whistleblower claims and states in its entirety:

 The submission shall state specifically each law, which is or was believed to
have been violated and the factual basis for the claimant's belief that such
violation occurred. It shall further state each "appropriate law enforcement
authority" to whom or which the violation has been reported. The grievance
shall be filed at Step 4 (Chief of Police) and proceed through the steps in this
process, provided however, that any person who is implicated in any of the
reports shall not be included in the steps of the grievance process. The
Chief shall designate an alternate step in such instance, or if the Chief is
implicated, the City Manager shall designate the alternate step.


The imprecisely worded grievance procedure thus presents the whistleblower with a
confusing procedure: does he follow Steps 1 through 4, or does he follow the instructions
in Subsection E pertaining explicitly to "Whistleblower Claims?" We conclude that he must
begin at Step 4.

 Under contract law, when a specific provision expressly addresses the issue, that
provision controls the determination of the parties' intent, because the specific controls the
general. See Golden Spread Elec. Coop., Inc. v. Denver City Energy Assocs., L.P., 269
S.W.3d 183, 189 (Tex. App.-Amarillo 2008, pet. denied) (citing Ayres Welding Co. v.
Conoco, Inc., 243 S.W.3d 177, 181 (Tex. App.-Houston [14th Dist.] 2007, pet. denied)). 
Therefore, under Section E, the grievance process for a whistleblower begins at Step 4 by
filing the grievance with the chief of police, unless the chief of police is implicated in any
of the whistleblowing reports.

 This interpretation of Section E can be read in concert with Section A's requirement
that whistleblowers follow the "procedure usually applicable" because Section E requires
the whistleblower to follow, upon filing his grievance at Step 4, the remainder of the
process from Step 4 on. Unless the city manager stipulates otherwise, the whistleblower
must follow the "usual procedure" by filing his grievance with the chief of police, who then
has 30 days to respond in writing. If the chief of police fails to do so, then the grievance
is deemed denied, and the whistleblower may seek arbitration or litigation. This is the
"usual procedure" beginning at Step 4. 


 2. Torres's Compliance with the Grievance Procedure

 Here, in his proposed pleadings attached to his demand letter, Torres informed Noe
of each of the alleged violations and that each involved Chief of Police Smith. Additionally,
in his reprimand reply, Torres informed Smith that he believed that the reprimand was
"brought, in part, for retaliatory purposes for bringing to light [c]riminal [v]iolations by police
officers," (3) and through his demand letter, he informed Noe that he had a claim "under the
Texas Whistleblower Act, Texas Government Code, Chapter 554."

 Under Section E, Noe was required to "designate an alternate step," but instead of
designating an alternative to Step 4, the City responded with a letter from the city attorney
informing Torres that his allegations were being investigated by the "Internal Affairs
Division of the Corpus Christi Police Department." The city attorney failed to indicate the
alternate step for Torres to follow, and Section E does not provide for an internal affairs
investigation. Thus, Torres was left with only one conclusion: his grievance had been
denied. (4)

 Analogizing Montgomery County Hospital District ("MCHD") v. Smith, the City argues
that Torres's demand letter and reprimand reply fail to indicate an intent to invoke the
grievance procedure. See 181 S.W.3d 844, 850-51 (Tex. App.-Beaumont 2005, no pet.). 
In MCHD, the complainant asserted a whistleblower claim after the hospital district
terminated her employment. Id. at 845. Subsequent to her firing, the hospital district
offered her a severance package in exchange for her release of claims. Id. at 846. Smith
argued that a letter she sent to the hospital district's chief executive officer sufficed to
initiate the hospital district's appeal procedure. Id. The letter merely requested the chief
executive officer to reconsider the amount of her severance. Id. Noting that the hospital
district's appeal procedure did not require a complaining employee to use any specific form
or to include any specific information in her notice, the Beaumont Court of Appeals held
that Smith's letter failed to provide fair notice that she was appealing the termination of her
employment. Id. at 850. The appeals court based its decision on the fact that Smith made
no mention of her desire to have her firing reconsidered and that Smith only requested a
reconsideration of her severance pay. Id.

 The case before us differs significantly from MCHD. First, Section E, the
Agreement's grievance procedure for whistleblowers, requires the complainant to include
specific information in his filings; thus the same "fair notice" standard of MCHD does not
apply here. See id. at 850 (holding that "[i]n the absence of a statutory standard or a
standard created by an employee manual detailing the required contents of a public
employee's notice of appeal, . . . the notice must give the employer fair notice that the
public employee desires to appeal the employer's disciplinary decision  . . . ."). Second,
Section E provides for the city manager to designate alternative steps when, as in this
case, the chief of police is implicated in the grievance report. Torres filed his report in the
form of a demand letter with the person who has the authority to designate the alternative
steps, but that person did not so designate. Unlike in MCHD, where the complainant failed
to even raise the issue of her firing, Torres specifically informed the city manager that he
was complaining about retaliation by the chief of police for Torres's reporting a violation of
the law by other officers. See id. We do not find MCHD analogous to the present case.

 Section E's provision requiring the city manager to designate alternate steps when
the chief of police is implicated in a whistleblower's grievance report effectuates one of the
benefits of the Whistleblower Act: avoiding the situation where an employee has to
complain about adverse employment decisions to the very person who made them. See
generally City of New Braunfels v. Allen, 132 S.W.3d 157, 161 (Tex. App.-Austin 2004, no
pet.) (stating that the two legislative purposes of the Whistleblower Act are "(1) to protect
public employees from retaliation by their employer when, in good faith, employees report
a violation of the law, and (2) to secure lawful conduct on the part of those who direct and
conduct the affairs of public bodies"). By serving his demand letter on the city manager,
Torres informed the city manager that he was asserting a whistleblower claim against the
City and the grounds for that complaint as required under Section E. Torres took the
additional step of filing a reprimand reply in which he informed the chief of police that he
believed the chief was retaliating against him for reporting other officers' violations of the
law. We conclude that, under these facts, Torres properly initiated the grievance
procedure as required under the Whistleblower Act. See Tex. Gov't Code Ann. § 554.006. 
We sustain Torres's first issue. 

V. Conclusion

 Having found that Torres properly initiated the grievance procedure, we reverse the
trial court's grant of the City's plea to the jurisdiction, and we remand the cause to the trial
court for further proceedings.



 _______________________________

 GINA M. BENAVIDES,

 Justice

 

Delivered and filed the

11th day of March, 2010.

1. Section 554.0035 waives the local government entity's sovereign immunity for suits brought under
section 554.002. See Tex. Gov't Code Ann. § 554.0035 (Vernon 2004).
2. In his second appellate issue, Torres argues that if he failed to properly initiate the grievance
procedure, the correct trial court action is abatement. The City contends that because initiating the grievance
procedure is a jurisdictional statutory prerequisite to suit, the correct action is dismissal. We do not reach this
argument because our resolution of Torres's first issue is dispositive of his appeal. See Tex. R. App. P. 47.1;
see generally City of Fort Worth v. Shilling, 266 S.W.3d 97, 102 n.2 (Tex. App.-Fort Worth 2008, pet. denied);
Univ. of Houston v. Barth, 265 S.W.3d 607, 610 (Tex. App.-Houston [1st Dist.] 2008, pet.filed).


3. The City asserts that the reprimand reply was merely for "purposes of having a complete personnel
file . . ." because another section of the Agreement "contemplates that such replies will be kept in the
personnel file" and that if every reprimand reply was considered an initiation of the grievance procedure, then
the actual requirements under the grievance procedure would "become a nullity." On the facts of this case,
we disagree with the City's contention that treating Torres's reprimand reply as an initiation of the grievance
procedure would render the grievance procedure a nullity. As mentioned, Section E instructs the complainant
to file his grievance at Step 4 with the chief of police. Through the reprimand reply, Torres informed the chief
of police what his grievance was: that he was being subjected to retaliation for reporting alleged violations
of the law. However, because the chief of police was implicated in the grievance, Torres was not required to
present his grievance to the chief of police. Instead, he was required to follow whatever alternate steps the
city manager designated. Torres did present his grievance to the city manager, but the city manager failed
to designate any alternative steps. Thus, though unnecessary, Torres's reprimand reply was a part of his
attempt to initiate the grievance procedure applicable to whistleblowers under Section E. It was not merely
a personnel file action as asserted by the City.
4. Torres asserts that the City cannot complain about his failure, if any, to comply with the Agreement
because "the City committed the first material breach . . . ." See Hernandez v. Gulf Group Lloyds, 875 S.W.2d
691, 692 (Tex. 1994) (holding that when one party to a contract materially breaches the contract, the other
party's obligation is discharged or excused). The City argues that Torres waived any argument regarding a
breach of contract by not presenting it to the trial court via written motion, response or answer as required in
a summary judgment procedure. See Tex. R. Civ. P. 166a(c); Guerra v. Santa Rosa Indep. Sch. Dist., 241
S.W.3d 594, 599 n.3 (Tex. App.-Corpus Christi 2007, pet. denied). But see Schronk v. City of Burleson, No.
10-07-00399-CV, 2009 WL 2215081, at *4 (Tex. App.-Waco July 22, 2009, pet. filed) (noting that the supreme
court "has expressly rejected the application of the summary-judgment procedures required by Rule 166a in
the context of a plea to the jurisdiction") (citing Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217,
228-29 (Tex. 2004) (emphasis in original)). Because we find that Torres properly initiated a grievance under
the Agreement, we do not reach his argument regarding material breach of contract.