

## NUMBER 13-08-00700-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**DAVID TORRES,**                                                                          **Appellant,**

**v.**

**CITY OF CORPUS CHRISTI,**                                              **Appellee.**

### On appeal from the County Court at Law No. 4
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Yañez, Benavides, and Vela
### Memorandum Opinion by Justice Benavides

David Torres, appellant, appeals the trial court's dismissal of his whistleblower claim against the City of Corpus Christi ("City"), appellee, for lack of jurisdiction.  Torres argues that the trial court erred in dismissing his case for lack of jurisdiction, or, at the very least, that the trial court should have abated the case rather than dismiss it.  We reverse and remand.

## I. BACKGROUND

Torres, a 31-year veteran of the Corpus Christi Police Department ("Department") who had risen to the rank of commander, filed suit against the City on May 15, 2008, alleging a whistleblower claim under section 554.002 of the government code. *See* TEX. GOV'T CODE ANN. § 554.002 (Vernon 2004). Torres essentially asserts that three circumstances led to adverse employment actions taken against him.

First, Torres complains that on two different periods of hiring in his division, Torres's superiors wanted him to show favoritism to their preferred candidates. Torres told then Chief of Police Bryan P. Smith that he would not accept his superiors' recommendations, which Torres believed were discriminatory in that they only included "Anglo" officers. One of Torres's superiors challenged him regarding Torres's claim that the recommendations were discriminatory and complained to Smith.

Second, Torres asserts that Smith and an assistant chief instructed Torres to cease his investigation into assault allegations against an individual, stating that a "high powered" attorney was going to handle the assault case as a civil matter. Torres also alleged that this same individual was suspected of impersonating a Nueces County Sheriff's deputy, yet according to Torres, the supervisors in charge of the investigation failed to pursue it. Torres stated that he informed Smith that an investigation should be made regarding why these superiors did not investigate the matter. No investigation into the lack of investigation was made.

Third, Torres argues that in May 2007, a Nueces County assistant district attorney informed him that a fellow police officer had improperly purchased a vehicle from the police impound lot. Torres began investigating. During the course of the investigation, Torres argues, Smith made him a suspect. Torres was subjected to two interviews with the

Department's Internal Affairs division and a polygraph examination. The polygraph allegedly resulted in a finding of "Deception Indicated" regarding three areas of inquiry, including a question about whether Torres was being truthful during the Internal Affairs interviews. Torres contended that the assistant district attorney who originally informed Torres of the wrongdoing denied to Internal Affairs that he had given such information to Torres; however, the polygraph examination revealed "No Deception Indicated" on the question of who was Torres's informant.

Torres stated that, on April 23, 2008, Smith issued him a letter of contemplated disciplinary action in the form of termination of employment. According to Torres, the letter stated, in part, that "[h]onesty and integrity are paramount in the law enforcement profession." Torres and Corpus Christi Police Officers Association President Domingo Ybarra met with Smith, who initially offered Torres "alternative disciplinary punishment." Torres refused the offer, and Smith then offered Torres the option to retire in lieu of punishment. Torres refused this offer as well. Smith then gave Torres a letter stating that he was demoted from commander to captain and was suspended for 240 hours. Torres signed the letter acknowledging receipt of the punishment. Before Torres left the office, Smith took the letter back from Torres and stated that he needed to discuss the letter with "legal." Later that day, Smith issued Torres a letter of reprimand which asserted that Torres's investigation "was well below what [Smith] would consider an acceptable standard" indicating "a lack of investigative integrity and attempts to make said investigation culminate in a predetermined conclusion."

Torres contended that these actions were violations of the law and that he reported them to Smith. Torres argued that he was subjected to "adverse personnel action" in retaliation for making the reports. Specifically, Torres asserted that the adverse personnel

3

action "insure[d] that [he] will never be promoted to Assistant Chief of Police for the City of Corpus Christi and Chief of Police in any municipality in any State" and that the "reprimand is a precursor to future adverse personnel action, i.e. [sic], termination."

The April 23, 2008 reprimand letter informed Torres that he "may submit a written response to the Chief of Police, City of Corpus Christi, which will be placed in [his] personnel file."

On May 2, 2008, Torres provided a response to Smith. Torres stated in part that

[t]his Letter of Reprimand is brought, in part, for retaliatory purposes for bringing to light Criminal Violations by police officers. I have sought the investigation of various wrong doings[,] and I am being subjected to retaliation. I believe this Letter of Reprimand is a precursor to future planned disciplinary actions by the department and Chief of Police. I also request that the Chief of Police write a letter acknowledging that I have done no wrong as to each matter referred [to] in the Contemplated Disciplinary Action Letter.

Also on May 2, 2008, Torres delivered a demand letter and copy of a proposed original petition to Skip Noe, Corpus Christi City Manager. The letter stated that it was from a law office representing "David Torres in a claim against the City of Corpus Christi under the Texas Whistleblower Act, Texas Government Code, Chapter 554" and informed Noe that the claim was outlined in more detail in the attached proposed original petition. The demand letter also made a settlement offer to Noe and informed him that the lawyer was "instructed to file the lawsuit if this matter is not settled by noon on May 14, 2008." The proposed petition set forth the same allegations outlined above.

On May 14, 2008, the City responded to Torres's demand letter via a letter sent to Torres's attorney. The City stated in part "[y]our allegations are currently being investigated by the Internal Affairs Division of the Corpus Christi Police Department."

4

On May 15, 2008, Torres filed his original petition, which was identical to the proposed original petition he provided to the City on May 2, 2008. In addition to the aforementioned allegations, Torres also averred that all conditions precedent had been satisfied and that letters of reprimand cannot be grieved or appealed.

On August 7, 2008, the City answered, denying all of Torres's allegations, and on August 8, 2008, the City filed a plea to the jurisdiction and motion to dismiss for lack of jurisdiction. In the plea to the jurisdiction, the City asserted that as an employee of the Department, Torres was "a member of the collective bargaining unit and subject to the terms of the Agreement Between the City of Corpus Christi and the Corpus Christi Police Officers' Association" ("Agreement"). The City alleged that Torres failed to follow the grievance procedure for whistleblowers set out in the Agreement and that completion of the grievance procedure is jurisdictional. *See* TEX. GOV'T CODE ANN. § 554.006(a) (Vernon 2004) (requiring an employee of a local government entity to "initiate action under the grievance or appeal procedures of the employing . . . local governmental entity relating to suspension or termination of employment or adverse personnel action" prior to filing a whistleblower law suit); *id.* § 311.034 (Vernon Supp. 2009) ("Statutory prerequisites to a suit . . . are jurisdictional requirements in all suits against a governmental entity."). Therefore, the City contended, Torres failed to properly invoke the jurisdiction of the trial court.

On August 28, 2008, Torres responded to the City's plea to the jurisdiction and motion to dismiss. He asserted that he followed the appropriate procedure and that even if he did not, the lawsuit was merely prematurely filed and should be abated. On November 26, 2008, the trial court heard the arguments of the parties and granted the City's plea, thereby dismissing the case for lack of jurisdiction. This appeal ensued.

5

## II. STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to the merit of the asserted claims. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject-matter jurisdiction. *Id.*; *see Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Whether a trial court has subject-matter jurisdiction and whether a pleader has alleged facts that affirmatively demonstrate the trial court's subject-matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

The plaintiff must plead facts affirmatively demonstrating that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 220 (Tex. App.–Fort Worth 2003, pet. denied). We liberally construe the pleadings in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See Miranda*, 133 S.W.3d at 226, 228; *City of Fort Worth v. Crockett*, 142 S.W.3d 550, 552 (Tex. App.–Fort Worth 2004, pet. denied).

A trial court's review of a plea to the jurisdiction challenging the existence of jurisdictional facts mirrors that of a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 228; *see* TEX. R. CIV. P. 166a(c). The governmental unit is required to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction. *Miranda*, 133 S.W.3d at 228. The plaintiff is then required to show that there is a disputed material fact regarding the jurisdictional issue. *Id.* If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder. *Id.* at 227-28. But, if the evidence is undisputed or fails to

6

raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

### III. APPLICABLE LAW

"A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority."[1] TEX. GOV'T CODE ANN. § 554.002(a). "'Personnel action' means an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation." *Id.* § 554.001(3) (Vernon 2004). "[F]or a personnel action to be adverse within the meaning of [section 554.002], it must be material, and thus likely to deter a reasonable, similarly situated employee from reporting a violation of the law." *Montgomery County v. Park*, 246 S.W.3d 610, 612 (Tex. 2007).

"A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter." TEX. GOV'T CODE ANN. § 554.006(a). If the local government entity does not render a final decision by the sixty-first day after the employee initiates the grievance or appeal procedures, the employee may elect to exhaust or terminate the procedures. *See id.* § 554.006(c). "While the Whistleblower Act [*see* TEX. GOV'T CODE ANN. §§ 554.001-.010 (Vernon 2004)] does not dictate what actions are required to 'initiate' the grievance procedure, the Act is remedial in nature and should be liberally construed to effect its purpose." *Tex. Youth*

---

[1] Section 554.0035 waives the local government entity's sovereign immunity for suits brought under section 554.002. *See* TEX. GOV'T CODE ANN. § 554.0035 (Vernon 2004).

*Comm'n-Evins Reg'l Juvenile Ctr. v. Garza*, No. 13-08-00527-CV, 2009 WL 1238582, at *5 (Tex. App.–Corpus Christi May 07, 2009, no pet.) (citing *Moore v. Univ. of Houston-Clear Lake*, 165 S.W.3d 97, 102 (Tex. App.–Houston [14th Dist.] 2005, no pet.); *City of New Braunfels v. Allen*, 132 S.W.3d 157, 161 (Tex. App.–Austin 2004, no pet.)). "Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."[2] TEX. GOV'T CODE ANN. § 311.034; *see Univ. of Houston v. Barth*, 265 S.W.3d 607, 610 (Tex. App.–Houston [1st Dist.] 2008, pet. filed) ("If the employee does not timely initiate the grievance procedure, then his claims are jurisdictionally barred.").

## IV. ANALYSIS

Torres first argues alternatively, that the appeal and grievance procedures in the Agreement do not apply in his case, but if they do, he complied. The City contends that the appeal and grievance procedures apply and that Torres failed to comply with either procedure.

### A. Applicability of Appeal Procedure

Torres asserts that the Agreement does not provide a method for appealing a reprimand. In Article 7 of the Agreement, entitled "Disciplinary Action," the Agreement, in Subsection A, states:

> The Chief shall have authority to demote, temporarily suspend not to exceed 240-work hours, or terminate any employee for the causes set forth in the

---

[2] In his second appellate issue, Torres argues that if he failed to properly initiate the grievance procedure, the correct trial court action is abatement. The City contends that because initiating the grievance procedure is a jurisdictional statutory prerequisite to suit, the correct action is dismissal. We do not reach this argument because our resolution of Torres's first issue is dispositive of his appeal. *See* TEX. R. APP. P. 47.1; *see generally City of Fort Worth v. Shilling*, 266 S.W.3d 97, 102 n.2 (Tex. App.–Fort Worth 2008, pet. denied); *Univ. of Houston v. Barth*, 265 S.W.3d 607, 610 (Tex. App.–Houston [1st Dist.] 2008, pet.filed).

Rules and Regulations of the Civil Service Commission for Firefighters and Police Officers of the City. In the alternative, the Chief shall have authority to impose "alternate disciplinary actions" in the nature of required attendance at and participation in remedial, educational or rehabilitative programs . . . The employee may appeal such actions as provided herein. Nothing herein shall be construed to allow appeals of reprimands or other disciplinary actions or alleged disciplinary actions, which were not previously appealable . . . .

With regard to reprimands, Subsection U of Article 7 of the Agreement provides:

Written reprimands may be issued by any supervisor to an office without requiring prior notification. Copies of all written reprimands shall be given to the affected officer. The officer may reply, and such reply shall become a part of the officer's permanent civil service file. No written reprimand shall be placed in the file without the officer's knowledge. Letters of counseling shall become a part of the officer's departmental file.

The agreement does not expressly provide for appealing a reprimand. In fact, Subsection A indicates that reprimands "were not previously appealable." The only response to a reprimand provided in the Agreement is the officer's right to reply, which Torres did on May 2, 2008. We agree with Torres that Article 7's appeal procedure does not apply to reprimands.

## B.    Applicability of Grievance Procedure

Torres also argues that the grievance procedure in Article 8 of the Agreement does not apply to his whistleblower claim. The City asserts that the grievance procedure expressly applies, and we agree, although we disagree with part of the City's reasoning.

The City first contends that Torres judicially admitted that the grievance procedure applies and that he failed to comply with it by stating in his "Second Amended Original Petition," Torres's live pleading, that "[l]etters of reprimand cannot be grieved or appealed by employees of Defendant City of Corpus Christi." *See Bowen v. Robinson*, 227 S.W.3d 86, 94 (Tex. App.–Houston [1st Dist.] 2006, pet. denied) ("In order for a pleading to be

9

deemed a judicial admission, it must be deliberate, clear, and unequivocal."); *Lyons v. Lindsey Morden Claims Mgmt. Inc.*, 985 S.W.2d 86, 92 (Tex. App.–El Paso 1998, no pet.) (noting that "[j]udicial admissions are assertions of fact, not pleaded in the alternative, in the live pleadings of a party"). While Torres did make the aforementioned statement in the "Conditions Precedent" section of his "Second Amdended Original Petition," he stated in the "Whistleblower Claim" section of his live pleading that the May 2, 2008 reply to the reprimand represented his grievance. Such conflicting allegations are not unequivocal and cannot be a judicial admission. *See Field v. AIM Mgmt. Group, Inc.*, 845 S.W.2d 469, 472 (Tex. App.–Houston [14th Dist.] 1993, no writ).

Article 8 of the Agreement, entitled "Grievance Procedure," expressly provides a procedure for grieving whistleblower claims. In Subsection A, it states in relevant part,

> [o]nly matters involving the interpretation, application, or enforcement of the terms of this agreement, shall constitute a grievance under the provisions of this grievance procedure, with the exception of Whistleblower claims. Any claim of adverse action based on Whistleblower status under Article 554, Government Code, or federal law must be in accordance with the procedure usually applicable under this grievance procedure, and shall follow the process set forth in Section E.

Torres asserted in his "Second Amended Original Pleading" that he was bringing his claim "under the Texas Whistleblower Act, Texas Government Code, Chapter 554." Thus, we conclude that the grievance procedure does apply to Torres's whistleblower claim.

## C.  Compliance with Grievance Procedure

Torres next argues that he complied with the grievance procedure by delivering his reply to Smith's reprimand and through the demand letter his attorney sent to Noe. The City asserts that Torres failed to initiate the grievance procedure because he failed to follow the grievance steps provided in the Agreement.

1. *The Agreement's Grievance Procedure*

As mentioned, the grievance procedure is set forth in Article 8 of the Agreement. Subsection A directs the whistleblower to perform what appears to be two tasks: (1) follow the usual grievance procedure, and (2) follow the procedure set out in Subsection E entitled "Whistleblower Claims."

For non-whistleblower complaints, the usual procedure is clear and comprises five steps which are explained in Subsection D. The first step is entitled "Informal Process" and permits employees to "informally resolve their concerns through their immediate supervisor or others consistent with the chain of command." Step 2 states that the non-whistleblower shall submit his grievance in writing to the police officer's association ("association") within 30 days of the grievance. Step 2 gives the association sole discretion to determine within 30 days whether the grievance is valid. Step 3 commands the police officer's association to present the grievance to the commander in the aggrieved employee's chain of command, if the association finds the grievance to be valid. The commander has 30 days to respond, and if he does not do so within 30 days, the grievance is deemed denied. Step 4 allows the association to submit a grievance from Step 3 to the chief of police who shall respond in writing within 30 days of receipt of the grievance. Step 5 provides that the association may submit the grievance to arbitration within 60 days of a denial of the grievance at Step 4.

Subsection E applies exclusively to whistleblower claims and states in its entirety:

> The submission shall state specifically each law, which is or was believed to have been violated and the factual basis for the claimant's belief that such violation occurred. It shall further state each "appropriate law enforcement authority" to whom or which the violation has been reported. The grievance shall be filed at Step 4 (Chief of Police) and proceed through the steps in this process, provided however, that any person who is implicated in any of the

11

> reports shall not be included in the steps of the grievance process. The Chief shall designate an alternate step in such instance, or if the Chief is implicated, the City Manager shall designate the alternate step.

The imprecisely worded grievance procedure thus presents the whistleblower with a confusing procedure: does he follow Steps 1 through 4, or does he follow the instructions in Subsection E pertaining explicitly to "Whistleblower Claims?" We conclude that he must begin at Step 4.

Under contract law, when a specific provision expressly addresses the issue, that provision controls the determination of the parties' intent, because the specific controls the general. *See Golden Spread Elec. Coop., Inc. v. Denver City Energy Assocs., L.P.*, 269 S.W.3d 183, 189 (Tex. App.–Amarillo 2008, pet. denied) (citing *Ayres Welding Co. v. Conoco, Inc.*, 243 S.W.3d 177, 181 (Tex. App.–Houston [14th Dist.] 2007, pet. denied)). Therefore, under Section E, the grievance process for a whistleblower begins at Step 4 by filing the grievance with the chief of police, unless the chief of police is implicated in any of the whistleblowing reports.

This interpretation of Section E can be read in concert with Section A's requirement that whistleblowers follow the "procedure usually applicable" because Section E requires the whistleblower to follow, upon filing his grievance at Step 4, the remainder of the process from Step 4 on. Unless the city manager stipulates otherwise, the whistleblower must follow the "usual procedure" by filing his grievance with the chief of police, who then has 30 days to respond in writing. If the chief of police fails to do so, then the grievance is deemed denied, and the whistleblower may seek arbitration or litigation. This is the "usual procedure" beginning at Step 4.

12

## 2. *Torres's Compliance with the Grievance Procedure*

Here, in his proposed pleadings attached to his demand letter, Torres informed Noe of each of the alleged violations and that each involved Chief of Police Smith. Additionally, in his reprimand reply, Torres informed Smith that he believed that the reprimand was "brought, in part, for retaliatory purposes for bringing to light [c]riminal [v]iolations by police officers,"[3] and through his demand letter, he informed Noe that he had a claim "under the Texas Whistleblower Act, Texas Government Code, Chapter 554."

Under Section E, Noe was required to "designate an alternate step," but instead of designating an alternative to Step 4, the City responded with a letter from the city attorney informing Torres that his allegations were being investigated by the "Internal Affairs Division of the Corpus Christi Police Department." The city attorney failed to indicate the alternate step for Torres to follow, and Section E does not provide for an internal affairs investigation. Thus, Torres was left with only one conclusion: his grievance had been denied.[4]

---

[3] The City asserts that the reprimand reply was merely for "purposes of having a complete personnel file . . ." because another section of the Agreement "contemplates that such replies will be kept in the personnel file" and that if every reprimand reply was considered an initiation of the grievance procedure, then the actual requirements under the grievance procedure would "become a nullity." On the facts of this case, we disagree with the City's contention that treating Torres's reprimand reply as an initiation of the grievance procedure would render the grievance procedure a nullity. As mentioned, Section E instructs the complainant to file his grievance at Step 4 with the chief of police. Through the reprimand reply, Torres informed the chief of police what his grievance was: that he was being subjected to retaliation for reporting alleged violations of the law. However, because the chief of police was implicated in the grievance, Torres was not required to present his grievance to the chief of police. Instead, he was required to follow whatever alternate steps the city manager designated. Torres did present his grievance to the city manager, but the city manager failed to designate any alternative steps. Thus, though unnecessary, Torres's reprimand reply was a part of his attempt to initiate the grievance procedure applicable to whistleblowers under Section E. It was not merely a personnel file action as asserted by the City.

[4] Torres asserts that the City cannot complain about his failure, if any, to comply with the Agreement because "the City committed the first material breach . . . ." *See Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) (holding that when one party to a contract materially breaches the contract, the other party's obligation is discharged or excused). The City argues that Torres waived any argument regarding a breach of contract by not presenting it to the trial court via written motion, response or answer as required in

13

Analogizing *Montgomery County Hospital District* ("*MCHD*") *v. Smith*, the City argues that Torres's demand letter and reprimand reply fail to indicate an intent to invoke the grievance procedure. *See* 181 S.W.3d 844, 850-51 (Tex. App.–Beaumont 2005, no pet.). In *MCHD*, the complainant asserted a whistleblower claim after the hospital district terminated her employment. *Id.* at 845. Subsequent to her firing, the hospital district offered her a severance package in exchange for her release of claims. *Id.* at 846. Smith argued that a letter she sent to the hospital district's chief executive officer sufficed to initiate the hospital district's appeal procedure. *Id.* The letter merely requested the chief executive officer to reconsider the amount of her severance. *Id.* Noting that the hospital district's appeal procedure did not require a complaining employee to use any specific form or to include any specific information in her notice, the Beaumont Court of Appeals held that Smith's letter failed to provide fair notice that she was appealing the termination of her employment. *Id.* at 850. The appeals court based its decision on the fact that Smith made no mention of her desire to have her firing reconsidered and that Smith only requested a reconsideration of her severance pay. *Id.*

The case before us differs significantly from *MCHD*. First, Section E, the Agreement's grievance procedure for whistleblowers, requires the complainant to include specific information in his filings; thus the same "fair notice" standard of *MCHD* does not apply here. *See id.* at 850 (holding that "[i]n the absence of a statutory standard or a

---

a summary judgment procedure. *See* TEX. R. CIV. P. 166a(c); *Guerra v. Santa Rosa Indep. Sch. Dist.*, 241 S.W.3d 594, 599 n.3 (Tex. App.–Corpus Christi 2007, pet. denied). *But see Schronk v. City of Burleson*, No. 10-07-00399-CV, 2009 WL 2215081, at *4 (Tex. App.–Waco July 22, 2009, pet. filed) (noting that the supreme court "has expressly rejected the application of the summary-judgment *procedures* required by Rule 166a in the context of a plea to the jurisdiction") (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228-29 (Tex. 2004) (emphasis in original)). Because we find that Torres properly initiated a grievance under the Agreement, we do not reach his argument regarding material breach of contract.

14

standard created by an employee manual detailing the required contents of a public employee's notice of appeal, . . . the notice must give the employer fair notice that the public employee desires to appeal the employer's disciplinary decision  . . . ."). Second, Section E provides for the city manager to designate alternative steps when, as in this case, the chief of police is implicated in the grievance report.  Torres filed his report in the form of a demand letter with the person who has the authority to designate the alternative steps, but that person did not so designate.  Unlike in *MCHD*, where the complainant failed to even raise the issue of her firing, Torres specifically informed the city manager that he was complaining about retaliation by the chief of police for Torres's reporting a violation of the law by other officers.  *See id.*  We do not find *MCHD* analogous to the present case.

Section E's provision requiring the city manager to designate alternate steps when the chief of police is implicated in a whistleblower's grievance report effectuates one of the benefits of the Whistleblower Act:  avoiding the situation where an employee has to complain about adverse employment decisions to the very person who made them.  *See generally City of New Braunfels v. Allen*, 132 S.W.3d 157, 161 (Tex. App.–Austin 2004, no pet.) (stating that the two legislative purposes of the Whistleblower Act are "(1) to protect public employees from retaliation by their employer when, in good faith, employees report a violation of the law, and (2) to secure lawful conduct on the part of those who direct and conduct the affairs of public bodies").  By serving his demand letter on the city manager, Torres informed the city manager that he was asserting a whistleblower claim against the City and the grounds for that complaint as required under Section E.  Torres took the additional step of filing a reprimand reply in which he informed the chief of police that he believed the chief was retaliating against him for reporting other officers' violations of the

law. We conclude that, under these facts, Torres properly initiated the grievance procedure as required under the Whistleblower Act. *See* TEX. GOV'T CODE ANN. § 554.006. We sustain Torres's first issue.

## V. CONCLUSION

Having found that Torres properly initiated the grievance procedure, we reverse the trial court's grant of the City's plea to the jurisdiction, and we remand the cause to the trial court for further proceedings.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
11th day of March, 2010.