**MONTGOMERY COUNTY,**
**Texas, Petitioner,**

v.

**David PARK, Respondent.**

**No. 05–1023.**

Supreme Court of Texas.

Argued March 20, 2007.

Decided Nov. 30, 2007.

---

**36.** *Crocker,* 466 F.3d at 350.

John J. Hightower, Brian J. Begle, Patricia L. Hayden, Scott Bounds, Olson & Olson, L.L.P., Houston, TX, for Petitioner.

Charles B. Frye, Lindeman, Alvarado & Frye, P.C., Houston, TX, for Respondent.

Ramon G. Viada III, Abrams Scott & Bickley, L.L.P., Houston, TX, for Amicus Curiae Texas Association of School Boards Legal Assistance Fund.

Scott Houston, Texas Municipal League, Austin, TX, for Amicus Curiae the Texas Municipal League and the Texas City Attorneys Assoc.

Ben Taylor, Fulbright & Jaworski L.L.P., Dallas, TX, for Amicus Curiae Zachry Construction Corporation.

Chief Justice JEFFERSON delivered the opinion of the Court.

The Texas Whistleblower Act prohibits state and local government employers from taking adverse personnel actions against employees who, in good faith, report violations of law to an appropriate law enforcement authority. TEX. GOV'T CODE §§ 554.001–554.010.[1] We must determine what qualifies as an "adverse" personnel action, as the Act provides no definition. *See id.* § 554.001. We hold that for a personnel action to be adverse within the meaning of the Act, it must be material, and thus likely to deter a reasonable, similarly situated employee from reporting a violation of the law. *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Because we conclude that David Park did not suffer an adverse personnel action, we reverse the court of appeals' judgment and render judgment for Montgomery County.

# I
## Background

Respondent David Park, a patrol lieutenant with the Montgomery County Sheriff's Department, also served as the security coordinator for Montgomery County convention center events. While Montgomery County owns the convention center, many activities there are privately sponsored. As security coordinator for these private events, Park received event sheets from the convention center's director, Don Carpenter, and arranged the hiring of off-duty deputies to provide security. Park conducted these activities from his office in the sheriff's department during regular business hours. He received no additional compensation from either the County or the convention center for coordinating security for these private events.

In the spring of 2002, during a meeting Park attended with County Commissioner Ed Rinehart and others, Rinehart allegedly spoke in graphic sexual terms about Park's administrative assistant and another administrative assistant. Park informed his administrative assistant of Rinehart's remarks, and another meeting attendee informed the other administrative assistant of the same. The two assistants then relayed numerous instances of Rinehart's alleged sexual harassment that occurred over the preceding months. Park reported Rinehart's remark, as well as the administrative assistants' accounts, to the

---

1. Instead of creating a general whistleblower law, the Legislature enacted several employee-specific whistleblower statutes. *See, e.g.,* TEX. AGRIC. CODE § 125.013(b) (protecting agricultural laborers from retaliation for reporting violations under the Agricultural Hazard Communication Act); TEX. GOV'T CODE § 554.002(a) (protecting public employees who report government violations of the law from retaliation); TEX. HEALTH & SAFETY CODE § 242.133(b) (protecting nursing home workers who report the abuse of home residents);

*see also Ed Rachal Found. v. D'Unger,* 207 S.W.3d 330, 331 (Tex.2006) (noting the Legislature's decision not to enact a single, comprehensive whistleblower statute); *Austin v. HealthTrust, Inc.—The Hosp. Co.,* 967 S.W.2d 400, 402 (Tex.1998) (detailing the various whistleblower statutes). We refer to the particular whistleblower statute which protects public employees from government retaliation as "the Whistleblower Act" or "the Act." TEX. GOV'T CODE §§ 554.001–554.010.

sheriff. The County then undertook an investigation. In the midst of that investigation, Rinehart allegedly ordered Carpenter to relieve Park of his security coordination duties. Those duties were transferred first to the constable's office and then rotated on a monthly basis between the sheriff's and constable's offices.

On October 30, 2002, Park sued Montgomery County, alleging that the County violated the Whistleblower Act by reassigning the security coordinator duties in retaliation for Park's report of Rinehart's comments. The County filed a plea to the jurisdiction and motion for summary judgment, raising no evidence claims and asserting that Park's whistleblower claim failed as a matter of law.[2] The trial court granted the County's motion for summary judgment, and Park appealed.

The court of appeals reversed and remanded, holding that Montgomery County was not entitled to summary judgment on any of the theories advanced. —— S.W.3d ——, 2005 WL 2667488. We granted Montgomery County's petition for review.[3] 50 Tex. Sup.Ct. J. 218 (Dec. 15, 2006).

## II

## Discussion

The Texas Whistleblower Act bars state and local governments from retaliating against public employees who report violations of law:

(a) A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

(b) In this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of criminal law.

TEX. GOV'T CODE § 554.002. While the Act defines a "personnel action" as "an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation," it does not define "adverse," *id.* § 554.001(3), and we have not previously had occasion to address the issue.[4]

---

2. In its motion for summary judgment, the County also asserted that Park's claim failed because: (1) it was barred due to governmental immunity; (2) there was no evidence that the alleged violation was committed by a public employee or employing governmental entity; and (3) there was no evidence that Park reported a violation of law to an appropriate law enforcement official. Because the Whistleblower Act contains a specific waiver of immunity, Park's claim is not barred. TEX. GOV'T CODE § 554.0035. In light of our holding that Park did not suffer an adverse personnel action within the meaning of the Act, we do not reach Montgomery County's remaining issues.

3. The Texas Municipal League and Texas City Attorneys Association, the Texas Association of School Boards Legal Assistance Fund, and Zachry Construction Corporation and H.B. Zachry Company submitted amicus curiae briefs.

4. The Legislature substituted the phrase "take other adverse personnel action" for "discriminate" as part of a 1995 amendment to the Act. Act of May 25, 1995, 74th Leg., R.S., ch. 721, § 2, 1995 Tex. Gen. Laws 3812.

Defining "adverse" in this context—and thus setting the level of protection provided by the Whistleblower Act—requires a careful balancing. By protecting state and local government employees who in good faith report violations of the law, the Act encourages reporting and thus endeavors to reduce unlawful conduct by government entities and employees. Requiring too high a level of adversity would defeat this important purpose. Conversely, setting the standard too low could, as Montgomery County and amici curiae warn, saddle the public with the cost of defending against unmeritorious claims—in terms of litigation expenses and in chilling innocuous personnel actions that an employee may perceive as subjectively adverse.

◼ The United States Supreme Court recently confronted a similar issue, when it determined how serious the harm from an allegedly retaliatory action must be to sustain a claim under the anti-retaliation provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a). *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Noting the importance of "separat[ing] significant from trivial harms"[5] and of "avoid[ing] the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings," the Court crafted an objective materiality standard: "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at ——, 126 S.Ct. at 2415 (citations and internal quotation marks omitted).

◼ The anti-retaliation provision of Title VII and the Whistleblower Act serve similar purposes, and we think it is appropriate to require plaintiffs to show objective, material harm under both. We therefore adopt the *Burlington* standard with appropriate modifications. We hold that a personnel action is adverse within the meaning of the Whistleblower Act if it would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act. This objective test strikes an appropriate balance between the need to shield whistleblowers (and thereby encourage the reporting of governmental lawbreaking) and the need to protect government employers from baseless suits, and, in addition, provides lower courts with a judicially manageable standard. *Burlington's* materiality requirement is calibrated to allow claims of retaliatory actions "likely to deter" reporting of governmental violations of the law,[6] but to weed out "petty slights [and] minor annoyances." *Id.* Likewise, the "similarly situated, reasonable employee" element bars

---

**5.** As the Court notes, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at ——, 126 S.Ct. at 2415. The same is true of a government employee's decision to report a violation of law under the Whistleblower Act.

**6.** We note that the challenged personnel action need not have likely dissuaded a reasonable employee from making the report at issue in a particular case, but rather any report covered by the Whistleblower Act. To interpret the standard otherwise would lead to the odd result that the more serious the violation alleged in the report (and thus the greater the impetus to report), the more severe the retaliatory action an employer could engage in without giving rise to a claim under the Act. *See Burlington*, 548 U.S. at ——, 126 S.Ct. at 2415; *see also id.* at ——, 126 S.Ct. at 2420 (Alito, J., concurring)(arguing that affording complaining employees a degree of protection inverse to the severity of the underlying discrimination would be "perverse").

trivial claims arising from personnel actions asserted to be adverse due to a "plaintiff's unusual subjective feelings" while retaining enough flexibility to allow claims arising from the "particular circumstances" of a challenged action. *Id.* at ——, 126 S.Ct. at 2415 (noting that "an act that would be immaterial in some situations is material in others" and that, for example, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children" (citations and internal quotation marks omitted)).[7]

▆▆▆ Whether a challenged action is adverse within the meaning of the Act is generally a question of law, and while the fact finder must decide disputed issues of predicate fact, there are no such issues here. Thus, having articulated the standard for an adverse personnel action under the Act, we must now determine whether there is evidence that Park suffered such an action here. While we take as true all evidence favorable to Park, indulging every reasonable inference and resolving any doubts in his favor, *Provident Life & Accident Insurance Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003), it is clear from the record that the changes to Park's security coordinator responsibilities do not constitute an adverse personnel decision within the meaning of the Whistleblower Act.

It is conceivable that, in some instances, the ability to assign extra jobs could be of such importance to a law enforcement officer that the loss of this authority may be materially adverse, but the *Burlington* standard must be applied to the circumstances presented. *See Burlington,* 548 U.S. at ——, 126 S.Ct. at 2416 ("An act that would be immaterial in some situations is material in others." (citations and internal quotation marks omitted)). Park does not argue that the loss of his security coordination responsibilities affected his prestige, opportunity for advancement in the department, or the difficulty of his work conditions.[8] Further, the challenged action neither reduced Park's pay for his core job duties nor generally precluded him from obtaining outside employment. Because the effects of a challenged action must be considered as a whole and in light of all the circumstances, though, the presence or absence of any one of these factors is not dispositive, and Park does argue that as security coordinator he had the ability to assign himself extra jobs at the convention center events, and thus that the bimonthly transfer of those duties adversely affected his compensation. There is, however, no evidence that losing the first choice of extra jobs at the convention center actually reduced Park's earnings.

Park received no extra salary as security coordinator, and he has not shown that the position allowed him to work more extra jobs than he would have without it. Had extra jobs been scarce, the ability to control one source of them might have been the difference between getting extra

---

7. For this reason, we have added "similarly situated" to the language used in *Burlington* to emphasize that while an employee's subjective feelings are not considered, the objective circumstances of his or her case must be taken into account.

8. The summary judgment evidence included the following colloquy regarding the benefits of the security coordinator position from Park's deposition:

[Montgomery County's Attorney]: Let me ask you one more time to make sure I understand. The only benefit that you consider yourself—extra benefit you consider yourself to have had from being the coordinator of security was the right to take first pick of security jobs at the convention center?

[Park]: That would be accurate, yes.

work and not. Here, however, even after losing the first choice of convention center jobs, Park assumed that he would be able to find outside work if he wished. There is, then, no evidence that the ability to assign himself convention center jobs actually increased Park's access to extra work and, thus, indirectly, his compensation.[9] Finally, we note that the loss of Park's coordinating duties stands in stark contrast to the reassignment from forklift operator to track laborer and unpaid thirty-seven day suspension, albeit with subsequent back pay awarded through internal grievance procedures, suffered by the complaining worker in *Burlington*. *Burlington*, 548 U.S. at ——, 126 S.Ct. at 2416. Therefore, applying the objective standard we announce today, we conclude that Park's loss of the first choice of convention center jobs would not, as a matter of law, be likely to deter a similarly situated, reasonable employee from reporting a violation of the law, and was thus not materially adverse.

### III

### Conclusion

Because we hold that Montgomery County did not violate the Whistleblower Act as a matter of law, the County is entitled to judgment. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). We reverse the court of appeals' judgment and render judgment

9. Because we hold that Park has not demonstrated a loss of income as a result of the removal of his security coordinator duties, we do not reach the question of whether Park's earnings as a security officer for third parties constitute compensation within the meaning of the Whistleblower Act. Similarly, although Park also alleges that losing the first choice of convention center jobs adversely affected his work assignment, we do not address whether,

for Montgomery County. Tex.R.App. P. 60.2(c).

for the purposes of the Act, work assignment can include outside employment—assuming without deciding that it can, the loss is nonetheless not materially adverse. Although Park may no longer be able to guarantee himself extra jobs that he personally finds particularly desirable, purely subjective adversity does not satisfy the *Burlington* standard, and there is no evidence that Park has lost access to objectively equivalent extra work.