**Opinion issued March 14, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00026-CV

———————————

**MICHAEL BARNETT, Appellant**

**V.**

**CITY OF SOUTHSIDE PLACE, Appellee**

---

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2014-69569

---

# O P I N I O N

Appellant, Michael Barnett, appeals from the trial court's order granting

appellee, City of Southside Place's plea to the jurisdiction in his suit brought under

the Texas Whistleblower Act. *See* TEX. GOV'T CODE ANN. §§ 554.001–.010 (West

2012).  In three issues, Barnett contends that the trial court erred in granting the City's plea because (1) the evidence raises a fact issue regarding whether (a) he suffered an adverse employment action and (b) the action was because of his report of the City's alleged violation of law, and (2) he should have been permitted an opportunity to conduct additional discovery.  We affirm.

## Background

Barnett worked as a detective for the City from approximately March 2013 to September 2014.  During the time period relevant to this appeal, Stephen McCarty was the City's Chief of Police.

In 2014, Barnett told McCarty that he had learned that the City had implemented an illegal ticket quota practice with its officers.[1]  On August 15, 2014, McCarty prepared a written memorandum to the Texas Rangers, summarizing a list of his grievances against David Moss, the City Manager, including the alleged ticket quota requirement.  On August 16, 2014, Chief McCarty sent an email to Glenn Patterson, the City Mayor, attaching his August 15 memorandum.  On August 18, 2014, Barnett and McCarty met with Texas Ranger Jeff Owls, at which time they

---

[1]    Section 720.002(b)(1) of the Transportation Code provides that "[a] political subdivision or an agency of this state may not require or suggest to a peace officer . . . that the peace officer is required or expected to issue a predetermined or specified number of any type or combination of types of traffic citations within a specified period . . . ."  TEX. TRANSP. CODE ANN. § 720.002 (West 2011).

reported the City's alleged ticket quota practice and presented McCarty's August 15 memorandum to him.

On August 19, 2014, one day after meeting with Owls, Barnett submitted a letter of resignation to Moss and McCarty with an effective date of September 3, 2014. On August 20, 2014, the City suspended McCarty pending an investigation into complaints about McCarty's conduct. On August 31, 2014, Moss sent an "Inquiry Memo" to department officers requiring them to answer a number of questions related to allegations of McCarty's misconduct. In their answers, two officers alleged that Barnett had encouraged them to leave the City's employment on more than one occasion between August 20 and August 30, 2014.

In an Inquiry Memo dated September 2, 2014, Moss informed Barnett that he was conducting an internal investigation into the officers' allegations regarding Barnett's alleged misconduct and directed him to answer the written questions and provide the documentation requested in the memo. The memo stated that the allegations, if true, constituted insubordination which would warrant Barnett's involuntary separation from the City's employment. In response, Barnet refused to answer the questions and informed Moss that he was resigning his position with the City, effective immediately.

On September 2, 2014, Moss prepared a Notice of Termination letter stating that Barnett's employment with the City was terminated for insubordination based

3

on (1) his refusal to comply with Moss's instructions related to the City's internal investigation into his conduct and (2) his suggestion to two other officers that they resign their employment with the City. On October 23, 2014, the City submitted a Texas Commission on Law Enforcement ("TCOLE") "Separation of Licensee (F-5)" form reflecting that Barnett had been "dishonorably discharged." In an accompanying letter to TCOLE, the City stated that the F-5 form was intended to amend a previous F-5 form completed by Barnett, and that Barnett had also completed F-5 documents for two other officers.

On November 26, 2014, Barnett filed suit against the City alleging that he had suffered adverse employment actions in retaliation for reporting a violation of law by the City to McCarty and the Texas Rangers. On November 9, 2015, the City filed its plea to the jurisdiction, arguing that the trial court lacked subject matter jurisdiction over Barnett's whistleblower claim because (1) the City did not take any adverse personnel action against him; (2) even if it had, there was no evidence that the adverse employment action was because of his report of the City's alleged violation of law; and (3) even if the City knew of his report before his separation from employment, it had a legitimate basis to terminate his employment based on his insubordination. On December 14, 2015, the trial court granted the City's plea and dismissed Barnett's whistleblower claim with prejudice.

4

**Discussion**

On appeal, Barnett contends that the trial court erred in granting the City's plea because the evidence raises a fact issue regarding whether he was suspended, terminated, or suffered some other adverse personnel action because he reported a violation of law by the City. He also argues that the trial court erred in ruling on the City's plea without permitting him to conduct additional discovery

## A. Plea to the Jurisdiction

Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is therefore properly asserted in a plea to the jurisdiction. *See Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Absent a waiver of governmental immunity, a governmental entity cannot be sued and a trial court does not have subject matter jurisdiction over an action against the entity. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).[2] Whether a trial court has subject matter jurisdiction is a question of law. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Pleadings are construed liberally in favor of the pleader, and all factual allegations are accepted as true. *See Miranda*, 133 S.W.3d at 227–28.

---

[2] It is undisputed that the City of Southside Place is a political subdivision of the State and, as such, is entitled to governmental immunity unless it has been waived.

A plea to the jurisdiction can be utilized to challenge whether the plaintiff has met his burden of alleging jurisdictional facts, but it can also raise a challenge to the existence of jurisdictional facts. *See id.* at 226–27. Where a plea to the jurisdiction challenges the existence of jurisdictional facts, as is the case here, the court considers the relevant evidence submitted by the parties to resolve the jurisdictional issues. *Id.* at 227. If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder. *Id.* at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

## B. Texas Whistleblower Act

Section 554.002(a) of the Government Code provides that "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE § 554.002(a) (West 2014). The Whistleblower Act further provides that "[a] public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter." *Id.* § 554.0035 (West 2014).

The Act contains two jurisdictional requirements before its waiver of governmental immunity takes effect: the plaintiff must (1) be a public employee and (2) allege a violation of the Act. *See State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009). To allege a violation of the Act, the plaintiff must allege that an adverse employment action was taken against him because he in good faith reported a violation of law by the employer or another public employee to an appropriate law enforcement authority. TEX. GOV'T CODE § 554.002(a); *City of S. Houston v. Rodriguez*, 425 S.W.3d 629, 631 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The elements of section 554.002(a) can be considered to determine both jurisdiction and liability. *Lueck*, 290 S.W.3d at 883.

## C. Analysis

In its plea and on appeal, the City does not dispute that Barnett is a public employee, that he made a good faith report that his employer or another public employee violated the law, or that he made the report to an appropriate law enforcement authority. Rather, the City argues that Barnett failed to present evidence raising a fact question as to whether (1) he suffered an adverse employment action and (2) the action was because he reported a violation of law.

Barnett asserts that he suffered adverse employment actions when the City (1) terminated his employment; (2) drafted a Notice of Termination letter and placed it in his file; (3) submitted an F-5 form to TCOLE reflecting that he was dishonorably

7

discharged; and (4) falsely accused him of submitting F-5 forms to TCOLE. In support of his argument that his employment was terminated, Barnett relies on Moss's deposition testimony that he fired Barnett, the Notice of Termination letter, and the City's letter to TCOLE regarding the amended F-5 form stating that the City terminated Barnett's employment on September 2, 2014. Barnett argues that this evidence demonstrates that the City intended to, and believed it had, fired him.

However, Barnett's assertion that his employment was terminated is belied by his own sworn testimony that he voluntarily resigned *before* he received the termination letter. At his deposition, Barnett testified as follows:

Q:    And your testimony in this case today is that you resigned?

A:    Uh-huh.

Q:    Is that yes?

A:    Yes.

. . . .

Q:    Well—your impression as it may be, we know you voluntarily left?

A:    Yes, I did.

. . . .

Q:    Stress, okay. Tell me about your stress, please, as it relates to this lawsuit.

A:    Obviously, it's going to cause stress if you get a letter in the mail saying that you were terminated after you already resigned.

8

. . . .

Q:     Were you terminated from the City or discharged from the City?

A:     No, sir.  I received a letter afterwards saying I was discharged.

Q:     Okay.  Is it your testimony that at that time you had already resigned from the City?

A:     Yes, sir.

Barnett also testified that, on September 2, 2014, when Moss instructed him to answer written questions and provide requested documentation as part of the internal investigation into his alleged misconduct, Barnett told him that he had already resigned and that he no longer considered himself an employee of the City. Although the termination letter might otherwise qualify as an adverse employment action under a different set of facts, it does not here because there is undisputed evidence that Barnett had already resigned his employment with the City.[3]

Barnett also argues that the City's submission of an F-5 form to TCOLE reflecting that Barnett was dishonorably discharged, and the City's statement in its accompanying letter to TCOLE that Barnett had completed his own F-5 form as well as F-5 forms for two other officers, constitute adverse employment actions which

---

[3]     At his deposition, Barnett also testified that, other than a written reprimand from McCarty in January 2014 for accidentally shooting a Taser in the department, no employment action had been taken against him as of the date of his resignation.

9

support his whistleblower claim. These complained-of actions occurred nearly two months *after* Barnett resigned his employment with the City.

Citing the Fifth Circuit's unpublished opinion in *Allen v. Radio One of Texas II, LLC*, Barnett argues that "[t]he Supreme Court has long allowed claims for retaliation by former employees against former employers for post-employment adverse employment actions." 515 F. App'x 295, 302 (5th Cir. 2013). In *Robinson v. Shell Oil Co.*, upon which the *Allen* court relies, the United States Supreme Court construed the term "employees," as used in section 704(a) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e, as amended)[4]—a statute not at issue here— to include former employees bringing suit for post-employment actions, noting that such an interpretation was consistent with the broader context of Title VII and the primary purpose of section 704(a). *See* 519 U.S. 337, 346, 117 S. Ct. 843, 849 (1997). Barnett urges us to similarly construe the term "employees" under the Texas Whistleblower Act to apply to former employees for post-employment actions.

In *Montgomery Co. v. Park*, the Texas Supreme Court had to determine what qualifies as an "adverse" personnel action under the Texas Whistleblower Act, as the Act provides no definition. 246 S.W.3d 610 (Tex. 2007). The Court noted that

---

[4] Section 704(a) makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment" who have either availed themselves of Title VII's protections or assisted others in doing so. *See* 78 Stat. 257 (42 U.S.C. §2000e–3(a), amended).

"[w]hile the Act defines a 'personnel action' as 'an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation,' it does not define 'adverse.'" *Id.* at 613. Recognizing that "[t]he anti-retaliation provision of Title VII and the [Texas] Whistleblower Act serve similar purposes,"[5] the Court adopted the "objective materiality standard" articulated by the United States Supreme Court in *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006), with appropriate modifications.[6] *Id.* at 614.

Here, by contrast, the term "public employee" is defined by the statute. If a statute defines a term, a court is bound to construe that term by its statutory definition only. *See Tex. DOT v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) (disagreeing with court of appeals' analysis as to whether TxDOT was "appropriate law enforcement authority" under Texas Whistleblower Act because court's analysis ignored limiting nature of Legislature's 1995 amendment to Act that defined "appropriate law

---

[5]    We recognize that Texas courts under certain circumstances look to federal interpretation of analogous federal statutes for guidance. For example, Chapter 21 of the Texas Labor Code, which prohibits unlawful employment practices by an employer, states that its *express* purpose is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB. CODE ANN. § 21.001(1) (West 2006); *see also NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).

[6]    The objective materiality standard requires that a plaintiff "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (internal quotations omitted).

11

enforcement authority," and in doing so, impermissibly expanded statutory definition); TEX. GOV'T CODE ANN. § 311.011(b) (West 2011) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). Under the Whistleblower Act, a "'public employee' means an employee . . . who *is paid* to perform services for a state or local governmental entity." *Id.* § 554.001(4) (emphasis added). Section 554.002(a) prohibits suspension or termination of the employment of, or other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity. *Id.* § 554.002(a). Section 554.001(3) defines a "personnel action" as "an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation." *Id*. § 554.001(3). The Act thus prohibits adverse personnel actions that affect the benefits flowing from an ongoing employment relationship. *See id.* § 554.001(3); 554.002(a).

Moreover, the Supreme Court's analysis in *Robinson* lends further support to our conclusion that "public employee" under the Whistleblower Act does not apply to former employees. There, the Court noted that Title VII's definition of "employee" as "an individual employed by an employer" lacks any temporal qualifier. *See* 519 U.S. 337, 342, 117 S. Ct. 843, 846 (1997). The *Robinson* Court opined:

12

> The argument that the term "employed," as used in § 701(f), is commonly used to mean "[p]erforming work under an employer-employee relationship," begs the question by implicitly reading the word "employed" to mean "*is* employed." But the word "employed" is not so limited in its possible meanings, and could just as easily be read to mean "*was* employed."

*Id.* at 342, 117 S. Ct. 847 (emphasis in original). In contrast, the Whistleblower Act defines "public employee" as "an employee . . . who *is paid* to perform services for a state or local governmental entity," and therefore narrows the definition of the term. TEX. GOV'T CODE § 554.001(4) (emphasis added).

We conclude that Barnett has failed to raise a fact issue regarding whether he was suspended, terminated, or suffered some other adverse personnel action because he reported a violation of law. *Garcia*, 372 S.W.3d at 635.[7] We overrule Barnett's first and second issues.

In his third issue, Barnett contends that the trial court erred in granting the City's plea because he should have been permitted an opportunity to conduct additional limited discovery.

On October 30, 2015, Barnett filed a motion for continuance of the February 1, 2016 trial setting and docket control deadlines to allow him time to depose McCarty who was away on active military engagement and would not be available

---

[7] Because Barnett failed to present evidence raising a fact question with regard to whether he suffered an adverse employment action, we need not consider his argument that the City's actions were "because" of his report to the Texas Rangers.

13

before March 2016.  The City filed its plea to the jurisdiction on November 9, 2015, and set it for hearing on December 12, 2015.  On November 23, 2015, the trial court signed an order resetting the trial date to the two-week period starting February 15, 2016, and extending the discovery period for one month.  The order further stated that all other deadlines remained in place and that the trial court would conduct a hearing on the City's plea at its original setting of December 14, 2015.  The court subsequently granted Barnett's motion to compel the depositions of several City employees but ordered that the depositions not occur until after the court had ruled on the City's plea.

As a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion, and that the trial court (1) ruled on the request, objection, or motion, either expressly or implicitly, or (2) refused to rule, and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a).  Here, Barnett did not object to the trial court's order on his motion for continuance, the hearing date for the City's plea to the jurisdiction, or the trial court's order on his motion to compel.  Having failed to do so, Barnett has not preserved his complaint for our review.  TEX. R. APP. P. 33.1; *McKinney Ave. Props. No. 2, Ltd. v. Branch Bank & Trust Co.*, No. 05-14-00206-CV, 2015 WL 3549877, at *5 (Tex. App.—Dallas June 5, 2015, no pet.) (mem. op.) (concluding that where record did not show that trial court ruled, or refused to rule,

14

on plaintiff's motion to continue summary judgment hearing to allow party to conduct additional discovery, or that plaintiff objected to refusal, plaintiff failed to preserve issue for appellate review); *Alderson v. Alderson*, 352 S.W.3d 875, 879 (Tex. App.—Dallas 2011, pet. denied) (finding party failed to preserve error where he could not point to anywhere in record showing he objected to or obtained ruling on trial court's alleged denial of discovery); *see also Miranda*, 133 S.W.3d at 229 ("[T]he scheduling of a hearing of a plea to the jurisdiction is left to the discretion of the trial court, which is in the best position to evaluate the appropriate time frame for hearing a plea in any particular case."). Accordingly, we overrule Barnett's third issue.

## Conclusion

We affirm the trial court's order granting the City's plea to the jurisdiction and dismissing Barnett's claims under the Texas Whistleblower Act for want of jurisdiction.

Russell Lloyd
Justice

15

Panel consists of Justices Keyes, Higley, and Lloyd.

Justice Keyes, dissenting.