**REVERSE and RENDER; and Opinion Filed July 3, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00490-CV

### CITY OF DALLAS, Appellant
### V.
### CHRISTOPHER WORDEN, Appellee

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-12090**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Boatright
Opinion by Justice Boatright

This is an interlocutory appeal from the trial's court's partial denial of the City of Dallas's plea to the jurisdiction, which urged that the trial court lacked subject matter jurisdiction over Christopher Worden's suit under the Texas Whistleblower Act (the Act). The City contends that the trial court erred in allowing Worden's suit to go forward because (1) Worden failed to initiate appropriate grievance procedures for all the adverse personnel actions he alleges, (2) a number of Worden's complained-of actions were not materially adverse within the meaning of the Act, and (3) Worden cannot establish that most of the allegedly adverse actions were caused by his report of inappropriate conduct by other officers. We conclude that the City has established that the trial court lacks jurisdiction in this case. We reverse the portion of the trial court's order that denies the City's plea to the jurisdiction, and we dismiss Worden's claim with prejudice to its refiling.

## Background

In 2014, Worden was involved in two incidents that form the basis of this appeal. In April, Worden and several other officers responded to a suspicious-persons call at a Wal-Mart Supercenter regarding a group of juveniles in the store's parking area. Worden detained some of the juveniles in one area and then joined officers who were dealing with other juveniles in another area. When he arrived, Officer Nicholas Smith and Sergeant Fred Mears told him to take the handcuffs off of a juvenile they had detained, and—after being ordered to do so multiple times— Worden took them off. He was unaware at the time that Smith had been threatening to fight the juvenile or that Mears had been laughing and encouraging the fight. When he realized Smith intended to fight the juvenile, Worden put the handcuffs back on the juvenile and placed him in a squad car.

Worden reported these events (the Juvenile Incident) to his supervisor, Sergeant Jason Scoggins, and then separately to two other sergeants. Worden believes his report of the Juvenile Incident caused embarrassment to Chief John Lawton (because Worden, Smith, and Mears were all in his chain of command), resentment to Lieutenant Aaron Bell (because the incident occurred on his watch), and anger to Lieutenant William Griffith (because he worked closely with Mears). A lengthy investigation followed Worden's report.

Meanwhile, in September, Worden and other officers responded to a report of an active shooter in a vehicle. Video of the confrontation reportedly showed Worden "body-slamming" the suspect against the side of his car, throwing him to the ground, and punching him in the groin and abdomen, despite the suspect's raising his hands (the Active Shooter Incident). Griffith initiated and led an investigation into the Active Shooter Incident; Worden was accused of using inappropriate force against a citizen, failure to wear a wireless body microphone, and speeding to the scene of the incident. Worden was placed on paid administrative leave during the investigation.

In March 2015, Chief Michael Genovesi, the Bureau Commander for the Patrol Division, held a hearing on the Juvenile Incident and suspended Worden for ten days. Genovesi suspended him for an additional fifteen days after a hearing on the Active Shooter Incident. Worden appealed both suspensions, and in August of that year Police Chief David Brown (1) rescinded all allegations against Worden in the Juvenile Incident and (2) rescinded all allegations against Worden in the Active Shooter Incident except for his failure to wear a body microphone and speeding. Worden was reimbursed his pay for the entire Juvenile Incident suspension; his suspension in the Active Shooter Incident was reduced to one day of the time he served.

Worden returned to work after serving the suspensions and was assigned to the department's Communication Division. Shortly after his punishment was reduced, Worden initiated this action under the Act, pleading that the City retaliated against him for his report of the Juvenile Incident.

## The City's Plea[1]

The Act provides that a local governmental entity may not take an adverse personnel action against a public employee who in good faith reports a violation of law by another public employee to an appropriate law enforcement authority. TEX. GOV'T CODE ANN. § 554.002(a) (West 2012). The Government Code permits the employee alleging such a violation to sue his employer and waives the employer's sovereign immunity for liability under the Act. *Id.* § 554.0035. However, the elements of section 554.002(a) determine both jurisdiction and liability. *State v. Lueck*, 290 S.W.3d 876, 883 (Tex. 2009). Thus, if a plaintiff fails to plead a viable cause of action under the Act, immunity is not waived, and the trial court lacks subject matter jurisdiction over the plaintiff's claim. *Id*. at 883–84.

---

[1] The City filed both a plea to the jurisdiction and a supplemental plea; we consider those documents together and refer to them together as the City's plea.

The City's plea urged at least one reason why each of the acts Worden called retaliatory were not violations of the Act. It argued that Worden had failed to initiate grievance procedures for a number of those acts, that many of the acts were not caused by any whistleblowing conduct by Worden, and that many of the acts alleged were not materially adverse to Worden. The City offered evidence in support of its plea so, to avoid dismissal, Worden had to raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 221, 228 (Tex. 2004) (plea to jurisdiction standard generally mirrors that of traditional motion for summary judgment). The trial court granted the City's plea as to three allegedly retaliatory acts and denied the plea on the remaining seven acts.[2]

The City contends again in this Court that Worden cannot plead a viable claim for retaliation. We agree that Worden has not pleaded a claim that may proceed under the Act. When cataloguing the personnel actions that he alleges were taken against him in retaliation for his report, Worden has identified some conduct that does not rise to the level of materially adverse personnel actions and other conduct that could not have been the legal cause of his injuries.[3]

### *A Materially Adverse Personnel Action*

The City argues that a number of the purportedly retaliatory acts Worden complains of were not materially adverse to him. In a claim brought under the Act, a personnel action is defined as "an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation." TEX. GOV'T CODE ANN. § 554.001 (West 2012). The test

---

[2] The trial court granted the plea as to the Internal Affairs investigations in both incidents, the initial six-month assignment of Worden to the Communications Division, and the creation of incorrect records about him by the City's attorney.

The trial court denied the City's plea as to the disciplinary actions taken against Worden for both incidents, his inability to take the senior corporal promotional examination, his assignment to the Communications Division for longer than six months, his inability to participate in the 2016 Patrol Bid, the creation of incorrect records about him by someone other than the City's attorney, and his assignment to the Employee Development Program.

[3] Because Worden's allegations of retaliation can be dismissed on grounds of material adverseness and causation, we need not address the City's argument that Worden failed to initiate grievance procedures properly for all of his complaints.

of adverseness under the Act is an objective one:  the action taken "must be material, and thus likely to deter a reasonable, similarly situated employee from reporting a violation of the law." *Montgomery County v. Park*, 246 S.W.3d 610, 612 (Tex. 2007). Whether a challenged action is adverse within the meaning of the Act is generally a question of law. *Id.* at 615. We conclude that four of Worden's allegations of retaliation were not materially adverse personnel actions.

*Assignment to Communications Division*

When Worden returned to work following his administrative leave and suspension, he was assigned to the Communications Division of the police force, and he spent approximately twenty months in that assignment. Worden has consistently acknowledged that his initial six-month assignment to Communications was not retaliatory.

But Worden contends that the time he spent in Communications after the initial six months was retaliatory. He alleges that Communications had "a stigma attached to it," and that it was "for 'troubled' or 'problem' officers," but he offers nothing more than his personal opinion to support that judgment. We have held that a police officer's subjective preference for assignment is insufficient to prove a materially adverse personnel action. *City of Dallas v. Giles*, No. 05-15-00370-CV 2016 WL 25744, at *4 (Tex. App.—Dallas January 4, 2016, no pet.) (mem. op.) (Dallas officer's subjective preference to remain in Communications rather than Patrol insufficient to make his transfer materially adverse).

The record establishes that Worden's rank and pay did not change when he was assigned to Communications. And there is evidence that Worden told both his Communications supervisor and the Employee Development Program board that he was happy working in Communications; he apparently did not take either of those opportunities to ask how he could obtain a transfer to another division. We discern no factual basis for making an exception to the rule in *Giles*:

Worden's subjective preference for transfer is insufficient to prove a materially adverse personnel action. *Id.*

*Inability to Bid for Patrol Job*

In a related allegation, Worden complains that he was not able to bid for a patrol job during the department's bid process. The 2016 opportunity to bid for a job in the Patrol Division actually took place in December 2015, while Worden was assigned to the Communications Division. Worden's name was left off of the list of those officers eligible to bid. He provided no evidence that the omission was intentional. The only explanation offered in the record is from the major assigned to the Communications Division; she suggested the omission was an oversight—that perhaps "someone forgot to include him." Worden rejects the City's evidence that he told a number of people, including the major, that he preferred to stay in Communications at that time, but the fact remains that his only alleged "injury" was remaining in Communications. In the absence of any evidence of purposeful retaliation involving the bid procedure, we must resolve this complaint as we did Worden's extended stay in Communications: his subjective preference for a different assignment is insufficient to prove a materially adverse personnel action. *Giles*, 2016 WL 25744, at *4.

*Assignment to Employee Development Program*

Worden alleges further that his assignment to the Department's Employee Development Program (EDP) was an adverse action taken in retaliation against him for his report concerning the Juvenile Incident. Worden testified that the EDP has a "negative connotation to it" because it operates under the Internal Affairs Department. He opines that the program is a remedial one, "for 'troubled' or 'problem' officers," pointing out that the triggers for candidacy involve discipline, criminal behavior, internal affairs investigations, and complaints.

The record establishes that he was "boarded and identified as a candidate" for the EDP in June 2015, shortly after he returned to work from his suspension and was assigned to the Communications Division. He was notified of his identification at a meeting "that looked exactly like a discipline board," but he does not remember anything from that meeting other than being asked questions, which he answered. Worden testified that he was not contacted concerning the EDP after that meeting, and he never "did anything for" the program. A year later he was told to report to another meeting, where he was notified that—because he had not had any further trouble—he did not need to be part of the program. In total, then, Worden attended just two meetings associated with the EDP: one introductory and one valedictory. Indeed, at the second meeting Worden was offered the opportunity to take advantage of some of the program's classes. He testified that some of the classes sounded interesting, and he conceded that the EDP was "a great program" for those who need it.

We conclude on this record that being identified for, and attending two meetings of, this program could not be a materially adverse personnel action within the meaning of the Act. The record contains no evidence of any injury to Worden in this process, and we cannot conclude that any other person would have been dissuaded from reporting wrongdoing because of such a petty slight or minor annoyance. *Montgomery County*, 246 S.W.3d at 614.

*Incorrect Records*

Worden also cites retaliation in the creation and circulation of two emails by the Communication Division's Project Coordinator in March 2016. In response to a request for a list of all officers on light duty, the coordinator emailed a list of five names; the list identified Worden as being on "restricted duty involving IAD investigations." The next day the coordinator emailed a second list of officers assigned to the "camera team," this time noting "[i]nvestigation" next to Worden's name. Worden correctly contends that his punishments in both incidents had been

rescinded months before this, and the record does not indicate he was under any new form of investigation in March 2016. However, he had originally been assigned to Communications as a result of investigations. The record does not indicate that these emails, both sent to a single recipient, became a source of embarrassment or reprisal for Worden in any way. These emails could not be materially adverse personnel actions within the meaning of the Act. At most, they are "minor annoyances" that will not support a claim for retaliation. *Montgomery County*, 246 S.W.3d at 614.

### *Causation Under the Whistleblower Act*

The City also argues that Worden did not prove his report was the legal cause of a number of the allegedly retaliatory acts. To evidence the necessary causal link under the Act, an employee must establish that—absent his protected conduct—the employer's acts would not have occurred when they did. *Tex. Dep't of Human Servs. of State of Tex. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995). A corollary to this general rule requires that the person who took the adverse employment action against the employee "*knew* of the employee's report of illegal conduct." *City of Killeen v. Gonzales*, No. 03-14-00384-CV, 2015 WL 6830599, at *2 (Tex. App.—Austin Nov. 3, 2015, no pet.) (mem. op.) (emphasis original). The City points to evidence establishing that Genovesi, who issued Worden's suspensions and paid leave, did not know that Worden had reported officers' conduct in the Juvenile Incident. Indeed, Worden acknowledged in his deposition that Genovesi did not discriminate against him.

But Worden asks us to consider the animus of other officers, not only Genovesi, as we address causation. He contends that Lawton recommended to Genovesi that Worden be placed on administrative leave and recommended he be suspended for both incidents. He points to Griffith's role in initiating and investigating the incidents. Some courts have adopted this type of "conduit" theory when one supervisor makes a recommendation concerning the employee to an "innocent

supervisor," and the latter then makes his decision without conducting an independent investigation or exercising independent judgment. *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 70 (Tex. 2000). However, we will not apply a conduit theory in this case for two reasons. First, the Texas Supreme Court has thus far declined to adopt the theory. *Id.* at 70–71. And second, the record contains evidence that Genovesi twice performed his own independent inquiry into Worden's allegations before issuing his punishment orders. Genovesi testified that in both instances, he reviewed all witness statements, attachments, and audio/video recordings before the hearing. And at each hearing, he permitted both Internal Affairs' representatives and Worden to present their view of the case, questioned Worden, and gave him a full opportunity to explain his actions. Thus, even if Genovesi received recommendations unfavorable to Worden from Lawton or other officers, he was an independent decision maker, exercising independent judgment. The conduit theory is inapplicable in Worden's case.

We conclude, therefore, that the disciplinary actions taken against Worden in connection with the Juvenile Incident (i.e., his suspension) and the Active Shooter Incident (i.e., his paid administrative leave, the manner in which he was placed on administrative leave, and his suspension) were not caused by Worden's report following the Juvenile Incident. Those actions did not represent retaliatory conduct under the Act.

We conclude further that Worden's missing the senior corporal examination during this time period was an indirect result of his being placed on leave by Genovesi, but was not purposeful retaliation for his report on the Juvenile Incident. Worden attributes his inability to sit for the exam to being placed on administrative leave. He states he had no way to sign up for or attend the exam given his loss of computer access to the Department and his confinement to his home. But we have concluded that his being placed on leave was not retaliatory; this indirect result of being on leave could not have been legally caused by his report. We acknowledge that Worden's discipline was

substantially rescinded by the Chief of Police. However, the fact that his actions in the two incidents were substantially justified does not mean that his initial punishments—or related complaints—amounted to acts of retaliation against him.

## Conclusion

The City has established that Worden did not plead a claim of retaliation based upon his reporting of the actions by other officers in the Juvenile Incident. Thus, the City's immunity has not been waived. We reverse the trial court's order insofar as it denied the City's plea to the jurisdiction, and we render judgment granting the City's plea. Because Worden was given the opportunity to amend his pleading after the City filed its plea, and his amended pleading still does not allege facts constituting a waiver of immunity, we dismiss Worden's lawsuit with prejudice. *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004).


/Jason Boatright/
JASON BOATRIGHT
JUSTICE


170490F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-17-00490-CV          V.

CHRISTOPHER WORDEN, Appellee

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-12090.
Opinion delivered by Justice Boatright.
Justices Francis and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** dismissing appellee Christopher Worden's lawsuit with prejudice.
.

It is **ORDERED** that appellant City of Dallas recover its costs of this appeal from appellee Christopher Worden.

Judgment entered this 3rd day of July, 2018.